HOLLY SHEPARD vs. ATTORNEY GENERAL.

Suffolk. November 7, 1990. - February 27, 1991.

Present: LIACOS, C.J., WILKINS, ABRAMS, & GREANEY, JJ.

*Practice, Civil*, Standing. *Attorney General. Inquest. Constitutional Law*, Separation of powers.

The decision whether or not to bring an inquest report to the attention of a grand jury for criminal proceedings is within the broad discretion of the Attorney General; no private citizen has a legally cognizable interest (i.e., standing) in the initiation of criminal proceedings against individuals named in an inquest report. [400-402]

A complaint seeking an order in the nature of mandamus requiring the Attorney General to bring an inquest report to the attention of a grand jury was properly dismissed, where there was no allegation that the Attorney General acted arbitrarily and capriciously in refusing to initiate criminal proceedings. [402-403]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on December 18, 1989.

The case was heard by *Lynch*, J., on a motion to dismiss.

*Camille F. Sarrouf* (*Michael D. Hashim, Jr.*, with him) for the plaintiff.

*Gerald T. FitzGerald*, Assistant Attorney General, for the Attorney General.

LIACOS, C.J. On September 19, 1988, Timothy Shepard collapsed while engaged in a police training course at the Edward W. Connelly Training Center (center) in Agawam. Within the next week, all fifty trainees who participated in the training exercises suffered some degree of muscle deterioration (rhabdomyolysis) due to heat exhaustion. Several trainees suffered renal failure, and eleven, including Shepard, were hospitalized. The Attorney General's office conducted an investigation of the incident. On October 28, 1988, that office issued a report which concluded that the trainees' inju-

ries were caused by a "consumption of fluids . . . wholly inadequate to compensate for the levels of physical exertion demanded by their bodies." The report also concluded that no criminal prosecution against members of the Massachusetts Criminal Justice Training Council (council)[1] or of the State police trainers was appropriate.

On November 2, 1988, Shepard died as a result of injuries sustained during the training. On November 3, 1988, the Attorney General, pursuant to his authority under G. L. c. 38, § 8 (1988 ed.), requested that an inquest be held to investigate Shepard's death. An inquest was convened before a judge of the District Court on November 28, 1988. The inquest was conducted over a period of two months; there were fifteen days of testimony from a total of sixty-six witnesses. On June 19, 1989, the judge filed a seventy-six page report of his inquest findings with the clerk of the Superior Court in Hampden County. The judge found that the training exercises held on September 19, 1988, lacked adequate structure and guidelines, and that Shepard was "subjected to intensive and extensive physical activities during periods of high temperatures," without sufficient rest periods, and without access to water to replace lost bodily fluids. The judge also found that "cadets, including Shepard, displayed many signs of exhaustion, illness and heat exhaustion. There was vomiting, dry heaves, disorientation, requests for water and a physical inability to continue. In spite of this, cadets were ordered to run laps or perform exercises." The judge concluded that there was probable cause to believe that three individuals[2] "engaged in conduct that appears to have contributed to the death of Timothy M. Shepard, and that such conduct consti-

[1] The report explained that the council "was established by the Legislature in 1974 (G. L. c. 6, § 116) to provide systematic training for all Massachusetts Criminal Justice personnel. Council jurisdiction includes the training of law enforcement, corrections, rehabilitation, probation, parole and court employees, and the establishment and operation of schools for that training."

[2] Gary Egan, executive director of the council; Earl Harrington, director of the Agawam Training Center; and State Trooper Charles Blake Gilmore, director of recruit training.

tute[d] the crime of involuntary manslaughter under the laws of the Commonwealth of Massachusetts because it was reckless and wanton or resulted from their unlawful acts."[3]

On August 31, 1989, the Attorney General filed a certificate with the clerk of the Hampden County Superior Court stating that Shepard's death would not lead to a criminal prosecution. The Attorney General also issued a lengthy statement in which he explained why in his opinion there was insufficient evidence to charge any of the putative defendants with manslaughter.

On December 18, 1989, Shepard's wife, Holly Shepard, filed the present action before a single justice of this court seeking an order in the nature of mandamus requiring the Attorney General to bring the inquest report to the attention of a grand jury. The Attorney General filed a motion to dismiss under Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974).[4] The single justice granted the Attorney General's motion. The plaintiff appeals the dismissal. We affirm.

As a threshold matter we note that the plaintiff does not have standing. "[T]he rights asserted by the [plaintiff] are not private but are in fact lodged in the Commonwealth as it may proceed to enforce its laws. . . . '[I]n American jurisprudence . . . a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another.' " *Manning* v. *Municipal Court of the Roxbury Dist.*, 372 Mass. 315, 317-318 (1977), quoting *Linda R.S.* v. *Richard D.*, 410 U.S. 614, 619 (1973). The plaintiff, therefore, does not have a private legal interest in having the Attorney General bring criminal proceedings against the individuals named in the inquest report. The rationale for denying the plaintiff standing,

---

[3]The judge also found that eight State troopers and several council employees may have violated the "hazing" statute. G. L. c. 269, §§ 17-18 (1988 ed.).

[4]The plaintiff invoked jurisdiction under G. L. c. 214, §§ 1, 2, & 8 (1988 ed.) (equity jurisdiction). The Attorney General also argued in his motion to dismiss that the court lacked jurisdiction over the subject matter under rule 12 (b) (1). In view of the result which we reach, "we need not dwell on the 'jurisdictional' basis of the action." *Burlington* v. *District Attorney for the N. Dist.*, 381 Mass. 717, 719 n.4 (1980).

however, is intimately linked to the doctrine of prosecutorial discretion. See *Ames* v. *Attorney Gen.*, 332 Mass. 246, 252 (1955) (decision whether to enforce charitable trust is within executive discretion of Attorney General, and members of general public lack private interest in seeking judicial review). "A [prosecutor] has wide discretion in determining whether to prosecute an individual, just as he has wide discretion whether to discontinue a prosecution once commenced." *Manning* v. *Municipal Court of the Roxbury Dist.*, *supra* at 318. We proceed to discuss the doctrine of prosecutorial discretion and its applicability to this case.

In evaluating the grant of a dismissal motion under rule 12 (b) (6) "we review the complaint to determine if, viewing its allegations and inferences broadly and in the plaintiff's favor, 'it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim' entitling her to relief." *Hobson* v. *McLean Hosp. Corp.*, 402 Mass. 413, 415 (1988), quoting *Nader* v. *Citron*, 372 Mass. 96, 98 (1977).

This court has recognized that prosecutors (district attorneys and the Attorney General) have broad discretion in deciding whether to prosecute. *Manning* v. *Municipal Court of the Roxbury Dist.*, *supra. Secretary of Admin. & Fin.* v. *Attorney Gen.*, 367 Mass. 154, 163 n.6 (1975). See *Opinion of the Justices*, 354 Mass. 804, 809-810 (1968); *Commonwealth* v. *Dascalakis*, 246 Mass. 12, 18 (1923); *Attorney Gen.* v. *Tufts*, 239 Mass. 458, 537-538 (1921); *Commonwealth* v. *Tuck*, 20 Pick. 356, 364 (1838). Judicial review of decisions which are within the executive discretion of the Attorney General "would constitute an intolerable interference by the judiciary in the executive department of the government and would be in violation of art. 30 of the Declaration of Rights." *Ames* v. *Attorney Gen.*, *supra* at 253. See *Burlington* v. *District Attorney for the N. Dist.*, 381 Mass. 717, 721 (1980) ("virtual exclusion of judicial intervention to check or correct the district attorney [in his choosing to nol pros a criminal case] follows from art. 30 of the Massachu-

setts Constitution declaring a separation of powers").[5] As a result, in the absence of allegations that the Attorney General acted arbitrarily and capriciously, discretionary executive decisions made by the Attorney General are beyond judicial review. *Secretary of Admin. & Fin.* v. *Attorney Gen., supra* at 165. See *Burlington* v. *District Attorney for the N. Dist., supra* at 722; *Attorney Gen.* v. *Tufts, supra* at 538.[6]

The plaintiff argues that the Attorney General's refusal to bring the inquest report before a grand jury constitutes conduct which is arbitrary and capricious. In effect, the plaintiff contends that the Attorney General was obligated to institute criminal proceedings after the judge conducting the inquest found probable cause to believe that a crime was committed. We disagree.

General Laws c. 38, § 8, states that "[t]he attorney general or the district attorney may . . . require an inquest to be held in case of any death supposed to have been caused by external means." G. L. c. 38, § 8. An inquest convened pursuant to G. L. c. 38, § 8, is "investigatory in character and not accusatory." *Kennedy* v. *Justice of the Dist. Court of Dukes County*, 356 Mass. 367, 374 (1969). "An inquest is not a prosecution of anybody. It is not a trial of anyone." *Id.* at 373. The inquest is to be used simply "as an aid in the achievement of justice by obtaining information as to

---

[5]Article 30 states that "[i]n the government of this commonwealth, the legislative department shall never exercise the executive and judicial powers or either of them: the executive shall never exercise the legislative and judicial powers, or either of them: the judicial shall never exercise the legislative and executive powers, or either of them: to the end it may be a government of laws and not of men."

[6]In *Attorney Gen.* v. *Tufts, supra* at 489, we stated as to the prosecutorial power: "The authority vested in him by law to refuse on his own judgment alone to prosecute a complaint or indictment enables him to end any criminal proceeding without appeal and without the approval of another official." We think that, if a prosecutor has extensive powers to nol pros a pending matter, see *Burlington* v. *District Attorney for the N. Dist., supra*, and *Commonwealth* v. *Dascalakis, supra*, the decision of a prosecutor whether or not to seek a complaint or indictment in the first instance can be reviewed by a court only under the same limited standard of judicial review.

whether a crime has been committed." *Id.* As a result, "in order to initiate a criminal prosecution, there must be subsequent and independent criminal proceedings." *Id.* at 374. Cf. *LaChapelle* v. *United Shoe Mach. Corp.*, 318 Mass. 166, 169-170 (1945).

An inquest held pursuant to G. L. c. 38, § 8, is a judicial hearing in which information is gathered to assist in the determination whether a crime has occurred. The decision whether to bring criminal proceedings against individuals remains in the hands of the Attorney General; his broad discretion on criminal matters is not constrained or limited by the factual findings and legal conclusions of an inquest.[7] The Attorney General does not relinquish his prosecutorial discretion by requesting an inquest, and as a result, he is not obligated to bring criminal proceedings if the inquest report finds probable cause.[8] The plaintiff in this case has not alleged any facts which show that the Attorney General was arbitrary and capricious in refusing to bring criminal proceedings as a result of Shepard's death.[9] There was no error in dismissing the complaint.

*Judgment affirmed.*

---

[7]If we accept the plaintiff's argument that the Attorney General is bound by the findings of an inquest, the Attorney General would be precluded from bringing criminal proceedings if the inquest finds no probable cause. Such a result would clearly violate the constitutional doctrine of separation of powers. See note 5, *supra.*

[8]The prosecution must eventually present sufficient proof to convince a jury beyond a reasonable doubt of every fact necessary to constitute the crime with which a defendant is charged. *In re Winship*, 397 U.S. 358, 364 (1970). *Commonwealth* v. *A Juvenile (No. 1)*, 396 Mass. 108, 113 (1985). This is obviously a more difficult burden to meet than establishing probable cause. It would be inappropriate to force a prosecutor to charge a defendant with a crime if the prosecutor believes that there is insufficient evidence, even after an inquest finding of probable cause, to establish the defendant's guilt beyond a reasonable doubt.

[9]The plaintiff states in her complaint that since the Attorney General is a member of the council, there is an "inherent conflict of interest," and that therefore the Attorney General should appoint an independent prosecutor to bring the inquest report before a grand jury. The plaintiff argues that this alleged conflict of interest places the integrity of the judicial sys-

tem at risk. "Generally, conflicts on the part of a [prosecuting] attorney arise when the prosecutor formerly was employed by the defendant or when the prosecutor's freedom from private influence is in question." *Commonwealth* v. *Colon*, 408 Mass. 419, 431 (1990). The Attorney General is statutorily mandated to sit on the twenty-three member council. G. L. c. 6, § 116 (1988 ed.). We do not think that the Attorney General's statutorily-mandated seat on the council raises a question regarding his freedom from personal influence.