COMMONWEALTH *vs.* CATHERINE M. THURSTON.

Plymouth. November 10, 1994. - December 5, 1994.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & GREANEY, JJ.

*Practice, Criminal,* Indictment, Dismissal. *District Attorney. Judge.*

A Superior Court judge erred in dismissing criminal indictments, over the
    Commonwealth's objection, where the reasons advanced by the judge
    did not amount to a justification for a dismissal in the "interests of
    public justice." [103-105]

COMPLAINT received and sworn to in the Hingham Divi-
sion of the District Court Department on September 7, 1990,
and, after waiver of indictment, the case was transferred to
the Superior Court Department and filed on December 21,
1990.

A pretrial motion to dismiss was heard by *Suzanne V.
DelVecchio,* J.

The Supreme Judicial Court granted a request for direct
appellate review.

*Frank M. Gaziano & Mary E. Mullaney,* Assistant Dis-
trict Attorneys, for the Commonwealth.

*Robert L. Jubinville* for the defendant.

NOLAN, J. Catherine Thurston, the defendant, was in-
dicted on January 28, 1991, for armed assault with intent to
murder her husband, Richard G. Thurston. She waived in-
dictment on charges of assault with intent to murder, and
assault and battery by means of a dangerous weapon follow-
ing complaints in the District Court. After the defendant
pleaded not guilty at arraignment, a Superior Court judge on
May 2, 1991, continued the case without a finding and
placed the defendant on pretrial probation for two years pur-
suant to G. L. c. 276, § 87, during part of which time the

defendant was a patient at a psychiatric hospital. On September 22, 1993, the judge dismissed the indictments. The Commonwealth objected to the dismissal and appealed to the Appeals Court. We allowed the Commonwealth's application for direct appellate review pursuant to Mass. R. A. P. 11, as amended, 409 Mass. 1602 (1991). See G. L. c. 211A, § 10(A). We reverse.

From the evidence presented by the police before the grand jury and from the Commonwealth's affidavit, we learn the following: For many years, the defendant from time to time was the victim of physical abuse by her husband. They also enjoyed some periods of domestic tranquility, though the defendant was suspicious that her husband was unfaithful to his marriage vows in connection with a former female neighbor. On the morning of September 7, 1990, the defendant walked upstairs to the bathroom in their home where her husband, the victim, was shaving. She shot him with a .25 caliber handgun until she exhausted all her bullets. She admitted this shooting to the police who responded to a call to take the victim to a hospital. The defendant was taken to the police station, booked, and given Miranda warnings before she told the police of a history of abuse over the thirty-three years of marriage and her suspicion of adultery. The victim described the events of the shooting but declined to testify before the grand jury, asserting his marital privilege.

After the shooting, the relationship between the defendant and the victim improved and both sought a dismissal of the charges through the defendant's motion to dismiss. The prosecutor opposed the dismissal and filed a counter affidavit. The judge dismissed the indictments over objection of the Commonwealth. At what might be called a hearing, the judge indicated (a transcript of the proceeding in material part is in the margin)[1] that the Commonwealth had no case

---

[1] THE JUDGE: "I'm going to allow the Motion to Dismiss, and I'm going to base it on the following findings that I make. I find that Mr. and Mrs. Thurston have been married approximately thirty-three years. I find that at the time of the incident, Mrs. Thurston was greatly distressed, and that for a period of seven weeks after which, she entered the Bournewood Hos-

because the husband (victim) refused to testify. Further, the preservation of family values was important and the defendant and her husband were now reconciled. A trial would be disruptive of this relationship, according to the judge. Further, the defendant's mental state was such (according to the judge) at the time of the shooting that it would be a waste of Commonwealth money to put her to trial. The judge sua sponte also expressed doubt whether the defendant's statements to police were voluntary, though the defendant never raised the issue of voluntariness by a motion to suppress.

---

pital. I do find that Mr. Thurston was injured in an incident that took place at their home in Hanover on or about September 7th, 1990, and I also find that it is probable that Mr. Thurston will not take the stand against Mrs. Thurston in this matter, and therefore, no matter what police reports there may be with regard to this, since they are husband and wife and no one can waive that privilege except Mr. Thurston, and he's indicated he does not waive the privilege not to testify, I would suggest that the Government basically does not have a sufficient case.

"However, I am aware of all of the other information; but that is not the sole reason why I am dismissing this case. I am dismissing this case because I do find that this family has now lived together and worked together and have been together in business since that time. They've indicated on the record that they are happy with each other, they have wonderful children, and they've made great strides in their relationship. That, frankly, is why I am dismissing this case. I think it would be a waste of the Commonwealth's money to prosecute this case and to go any further with this case."

. . .

THE PROSECUTOR: "Just briefly for the record, Mr. Thurston stood on his marital privilege at the time that he was called to the Grand Jury, and the Commonwealth could proceed on this case without his testimony in view of the fact that Mrs. Thurston made a lengthy statement to the police and there was other physical evidence to —"

"THE JUDGE: (Interrupting) I understand that. However, there's been no motion to suppress filed with regard to that statement and with regard to the statement and the state of Mrs. Thurston at the time it was made, and the fact that she entered the Bournewood Hospital for seven weeks after the statement was made, I'd be very hard-pressed to find that it would not, in fact, be suppressed, et cetera, if she had cognitively and voluntarily completely waived her rights not to speak, for instance, after a Miranda Warning. So, all of those things, as you know, would come out. But, in any event, that's not the only reason why I have dismissed this case. My reasons are on the record."

It is obvious that the Commonwealth had a triable case, that the physical evidence of blood at the scene, the spent cartridges and statements of the defendant after the shooting presented a prima facie case.

However, if the case were tried without jury, the judge, as trier of fact, might have been warranted in finding the defendant not guilty. The issue is whether the judge in these circumstances as a matter of law and procedure, was within her right to dismiss the indictments. We conclude that she erred in dismissing in these circumstances.

Recently, we repeated a legal precept of ancient authority that, as a general rule, a judge may not dismiss a legally valid indictment over objection by the Commonwealth. *Commonwealth* v. *Pellegrini*, 414 Mass. 402, 404-407 (1993). If the rule were otherwise, pretrial dismissal would "prematurely [cut] off the prosecution without a legal basis." *Commonwealth* v. *Gordon*, 410 Mass. 498, 503 (1991). It is important that prosecutors have broad discretion in determining whether to prosecute a case. *Shepard* v. *Attorney Gen.*, 409 Mass. 398, 401 (1991).

This court, however, has recognized in a very limited sphere a case which may be dismissed by a judge. We have said: "Without deciding the ultimate question of constitutionality, we believe that the procedure, utilized in this case either generally or under the statute, would not be constitutionally offensive if the following standards of procedure are met. When dismissal of a case is proposed by the defendant or by the judge without the consent of the Commonwealth, the defendant shall file an affidavit in support of a dismissal which shall contain all the facts and the law relied upon in justification of a dismissal. The Commonwealth may file a counter affidavit, and, as to matters contained in the affidavits which are in dispute, there shall be a hearing, unless the judge concludes that on the face of the affidavits "the interests of public justice" do not warrant a dismissal. If the judge concludes that the "interests of public justice" require a dismissal, he shall record the findings of fact and the reasons for his decision. The Commonwealth would have a right

of appeal under G. L. c. 278, § 28E, as amended." *Commonwealth* v. *Brandano*, 359 Mass. 332, 337 (1971).

It is clear from this language that on appeal, we shall examine whether the "interests of public justice" require a dismissal in the light of findings of fact and reasons advanced by the judge. The record does not reveal any affidavit from the defendant, though the Commonwealth refers to its affidavit as a counter affidavit. The judge advanced as one reason the inability of the Commonwealth to prove a case and this cannot stand because it is clear that the Commonwealth does have evidence by which it might present a prima facie case. It may be that after the presentation of such evidence, the judge at trial may have a reasonable doubt for any reason and the defendant would be found not guilty but that remains to be seen. The reasons advanced by the judge do not amount to a justification for a dismissal in the "interests of public justice" over objection of the Commonwealth. This judicial action cannot stand in the face of our rule in *Commonwealth* v. *Pellegrini, supra.*

Accordingly, the judgment of dismissal must be reversed.

*So ordered.*