## CAROL PERKINS *vs.* COMMONWEALTH & others.

No. 98-P-1988.

Worcester. October 5, 2000. - July 31, 2001.

Present: LAURENCE, DREBEN, & GELINAS, JJ.

*Negligence,* Employer. *Workers' Compensation Act,* Exclusivity provision, To whom act applies. *Common Law. Employment,* Constructive discharge, Termination. *Public Employment,* Police. *Public Policy. Anti-Discrimination Law,* Employment.

A claim by a cadet at the State police academy alleging negligence — premised upon allegations that academy personnel exacerbated an existing medical condition by misdiagnosing her condition and by negligently denying her requests for water, rest, and medication — was precluded by the exclusivity provisions of the workers' compensation act, where, if the claims were sustained at trial, the harm caused by the defendants' conduct would be compensable under G. L. c. 152, § 1(7A), as such conduct was at least a major cause of her disability or need for treatment [176-177]; further, there was no merit to the cadet's contention that her negligence claims were not barred because of the so-called "dual persona" doctrine [177-178].

A claim by a cadet at the State police academy that academy personnel, by allowing her to be hazed, constructively discharged her in violation of public policy, namely G. L. c. 269, § 17, was precluded by the workers' compensation act, where there was no Legislative directive or enunciated public policy that prevented the academy, a quasi military training institution, from discharging a cadet who could not tolerate the rigors and discipline required of other recruits or from discharging a cadet without any cause at all. [178-181]

A claim by a cadet at the State police academy that an employee of the academy refused to allow her to obtain sufficient water during training, and violated the Massachusetts Civil Rights Act by hazing and depriving her of a safe work environment and appropriate medical care was barred, where the cadet was unable to clearly identify any secured right with which the academy employee interfered. [181-182]

CIVIL ACTION commenced in the Superior Court Department on May 5, 1995.

The case was heard by *James P. Donohue,* J., on motions for summary judgment.

*Gary H. Goldberg* for the plaintiff.

*Brian Rogal* (*Sheila E. McCravy* with him) for Johanna Lawlor & others.

*Howard R. Meshnick,* Assistant Attorney General, for the Commonwealth & others.

DREBEN, J. While training as a cadet at the State Police Academy (Academy), the plaintiff became ill with a severe cold. She brought this action against three agencies of the Commonwealth[1] and three employees of the Academy,[2] alleging that during her illness she was required to participate in physical activities contrary to a physician's advice, was deprived of sufficient water, and suffered other humiliations and hazing. As a result, she became fearful for her health and found it necessary to resign. She contends that the defendant agencies were negligent in providing her with medical care and, citing G. L. c. 269, § 17, see note 7, *infra,* that the defendants, by allowing her to be hazed by Academy personnel, constructively discharged her in violation of public policy. She also claims that one of the individual defendants, Trooper Cambria, violated her civil rights. She sought damages for physical and emotional distress, loss of compensation and benefits, attorneys' fees, and reinstatement as a cadet at the Academy. A judge of the Superior Court granted motions for summary judgment for all the defendants. We affirm.

Although the defendants deny that the plaintiff was deprived of rest, water or medicine, for purposes of reviewing the motion judge's ruling, we assume the facts to be as alleged by the plaintiff and make all logically permissible inferences in her favor. *Willitts* v. *Roman Catholic Archbishop of Boston,* 411 Mass. 202, 203 (1991).

1. *Negligence.* The plaintiff recognizes that under G. L. c. 152, § 24, unless an employee expressly preserves his or her common law rights of action, a claim alleging negligence of an employer or of a coemployee is foreclosed by the exclusivity

---

[1]*Executive Office of Public Safety, Massachusetts Criminal Justice Training Council,* and *Department of State Police.*

[2]Leslie Bodor, Johanna Lawlor, and Lorraine Cambria.

provisions of the workers' compensation act (act).[3] *Foley* v. *Boston Housing Authy.*, 407 Mass. 640, 641 n.3 (1990). The plaintiff, however, argues that her common law claim of negligence is not barred because her illness, initially a severe cold, may have arisen from sources outside her employment and hence is not compensable under the act.[4] This argument is without merit, as her negligence claims are premised upon allegations that Academy personnel exacerbated her medical condition by misdiagnosing her condition and by negligently denying her requests for water, rest, and medication. If these claims were sustained at trial, the harm caused by the defendants' conduct would be compensable under G. L. c. 152, § 1(7A),[5] as such conduct was at least a major cause of her disability or need for treatment. The exclusivity provisions of the act would, therefore, control and preclude her negligence claim.

The plaintiff also urges that her negligence claims are not barred because of the "dual persona" doctrine which provides that an employer's conduct may in some instances be regarded as conduct of a third party and be subject to liability despite the exclusivity provisions of G. L. c. 152. Under this theory, an employer may be subject to suit if its "liability to the injured employee 'derives from a second persona so completely

---

[3]The parties, and hence we, proceed on the premise that cadets at the Academy are employees covered by the workers' compensation act. No party argues that G. L. c. 152, § 69, applies to exclude the plaintiff.

The first sentence of G. L. c. 152, § 24, as amended by St. 1991, c. 398, § 43, provides in relevant part:

"An employee shall be held to have waived his right of action at common law or under the law of any other jurisdiction in respect to an injury that is compensable under this chapter, to recover damages for personal injuries, if he shall not have given his employer, at the time of his contract of hire, written notice that he claimed such right. . . ."

[4]"To be compensable [under the workers' compensation act], injury must arise . . . from an identifiable condition that is not common . . . to all or a great many occupations." *Zerofski's Case*, 385 Mass. 590, 594-595 (1982).

[5]General Laws c. 152, § 1(7A), provides:

"If a compensable injury . . . combines with a pre-existing condition, which resulted from an injury or disease not compensable under this chapter, to cause or prolong disability or a need for treatment, the resultant condition shall be compensable only to the extent such compensable injury or disease remains a major but not necessarily predominant cause of disability or need for treatment."

independent from and unrelated to his status as employer that by established standards the law recognizes it as a separate legal person.' " *Barrett* v. *Rodgers*, 408 Mass. 614, 617 (1990), quoting from *Gurry* v. *Cumberland Farms, Inc.*, 406 Mass. 615, 620-621 (1990), in turn quoting from 2 A. Larson, Workmen's Compensation § 72.80, at 14-229 (1988). That doctrine, which has not been explicitly adopted in Massachusetts, although it has been alluded to favorably, *Barrett* v. *Rodgers, supra* at 617, does not aid the plaintiff's cause. The acts and omissions of the medical personnel claimed to be wrongful were an integral part of the Academy's role of providing medical assistance to cadets. The plaintiff did not see the medical personnel as a private patient, but rather as a cadet entitled to medical services. See *Scott* v. *Wolf Creek Nuclear Operating Corp.*, 23 Kan. App. 2d 156, 160 (1996) (malpractice action against company medical personnel barred by workers' compensation statute).

2. *Constructive discharge.* Claims for emotional or physical injuries because of wrongful termination or constructive discharge are also precluded by the workers' compensation act, *Simmons* v. *Merchants Mut. Ins. Co.*, 394 Mass. 1007, 1007-1008 (1985); see *Anzalone* v. *Massachusetts Bay Transp. Authy.*, 403 Mass. 119, 124-125 (1988), unless they are sustained in connection with claims that are not barred by the exclusivity provisions of the workers' compensation act. *Green* v. *Wyman-Gordon Co.*, 422 Mass. 551, 560-561 (1996). For this reason, the plaintiff argues that her claim of constructive discharge seeks contract damages.[6] Although it is dubious that she can show that she was constructively discharged, that is, that her employer created "working conditions . . . so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign," *GTE Prods. Corp.* v. *Stewart*, 421 Mass. 22, 34-36 (1995), quoting from *Alicea Rosado* v. *Garcia Santiago*, 562 F.2d 114, 119 (1st Cir. 1977), we will again assume for purposes of reviewing the summary judgment motion that she can sustain the claim.

Recognizing that an at-will employee may be terminated at

---

[6]Apparently, where physical or mental harm is incidental and not an indispensable ingredient of the contract claim, damages for such harms may be recovered. *Green* v. *Wyman-Gordon Co.*, 422 Mass. at 560-561.

any time for any reason or for no reason at all, *Upton* v. *JWP Businessland*, 425 Mass. 756, 757 (1997), the plaintiff points out that liability may be imposed on the employer if the employee is terminated "for a reason that violates a clearly established public policy." *Ibid.* The plaintiff claims that G. L. c. 269, § 17, is such a policy. That statute, set out fully in the margin,[7] defines "hazing" as "any conduct or method of initiation into any *student organization*, whether on public or private property, which wilfully or recklessly endangers the physical or mental health of any student or other person" (emphasis supplied). The "brutal treatment or forced physical activity" made criminal by the statute is directed at student organizations, not at the educational institutions themselves. The "lengthy statement" of Attorney General Shannon mentioned in *Shepard* v. *Attorney Gen.*, 409 Mass. 398, 400 (1991), and made a part of the record on this appeal, also considers the statute as applying solely to student organizations. Compare *Shepard, supra* at 400 n.3, where the trial judge found that State troopers and employees of the Massachusetts Criminal Justice Training Council may have violated the hazing statute.

Our cases interpret the public policy exception narrowly.

---

[7]General Laws c. 269, § 17, provides:

"Whoever is a principal organizer or participant in the crime of hazing, as defined herein, shall be punished by a fine of not more than three thousand dollars or by imprisonment in a house of correction for not more than one year, or both such fine and imprisonment.

"The term 'hazing' as used in this section and in sections eighteen and nineteen, shall mean any conduct or method of initiation into any student organization, whether on public or private property, which wilfully or recklessly endangers the physical or mental health of any student or other person. Such conduct shall include whipping, beating, branding, forced calisthenics, exposure to the weather, forced consumption of any food, liquor, beverage, drug or other substance, or any other brutal treatment or forced physical activity which is likely to adversely affect the physical health or safety of any such student or other person, or which subjects such student or other person to extreme mental stress, including extended deprivation of sleep or rest or extended isolation.

"Notwithstanding any other provisions of this section to the contrary, consent shall not be available as a defense to any prosecution under this action."

*King* v. *Driscoll*, 418 Mass. 576, 582 (1994).[8] For example, in *Upton* v. *JWP Businessland*, 425 Mass. at 759, a mother was not permitted to invoke public policy to bring an action for wrongful discharge where, because of childcare commitments, she could not work the long hours required by her employer. The court so held despite the strong policy favoring the care and protection of children, which is reflected in the possible eligibility for unemployment compensation in such circumstances.

Moreover, "the internal administration, policy, functioning and other matters of an organization cannot be the basis for a public policy exception to the general rule that at-will employees are terminable at any time with or without cause." *King* v. *Driscoll*, 418 Mass. at 583. The requirements of police training and the rigors to which cadets are subjected are internal matters of the Academy. See the portion of the Police Academy Handbook set out in the margin.[9]

Here, there is no Legislative directive or enunciated public policy that precludes the Academy, a quasi military training institution, from discharging a cadet who cannot tolerate the rigors and discipline required of other recruits or from discharging a cadet without any cause at all. The Academy need not "adjust its expectations, based on a case-by-case analysis of an

---

[8] For an enumeration of cases where the public policy exception made redress available to an at-will terminated employee and a list of cases where termination did not warrant recovery, see *Upton* v. *JWP Businessland*, 425 Mass. at 757-758.

[9] On page two of an undated publication of the Department of State Police contained in the record appendix, issued under the names of William F. Weld, Governor, Thomas C. Rapone, Secretary, and Charles P. Henderson, Colonel, and entitled *Massachusetts State Police, Academy Handbook*, the following is stated:

"To prepare recruits for this function, military drill and civil disturbance training are essential components of the State Police Academy recruit training program. Recruits learn to recognize rank, follow orders, practice facing movements, and become familiar with formations and techniques for responding to civil disturbances. In addition, recruits learn to keep their emotions in check and perform under pressure.

"The academy atmosphere is purposefully designed to develop these capabilities, build esprit de corps, and assist the recruit in making the challenging transition from civilian to disciplined Trooper. During the early phases of training, recruit behavior is tightly controlled and strictly directed to instill military discipline."

at-will employee's [fears for her or his health], or face liability for having discharged the employee." *Upton* v. *JWP Business-land*, 425 Mass. at 760.

3. *Civil rights claims.* Claims under the Massachusetts Civil Rights Act (MCRA), G. L. c. 12, § 11I, are not barred by the exclusivity provisions of the workers' compensation act. *Foley* v. *Polaroid Corp.*, 381 Mass. 545, 553 (1980). The claim here is that the defendant Trooper Cambria refused to allow the plaintiff to obtain sufficient water, and violated the MCRA by hazing and by depriving her of a safe work environment and appropriate medical care. To establish a claim under the MCRA, a plaintiff must prove that "(1) [her] exercise or enjoyment of rights secured by the Constitution or laws of either the United States or of the Commonwealth, (2) have been interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by 'threats, intimidation or coercion.' *Swanset Dev. Corp.* v. *Taunton*, 423 Mass. 390, 395 (1996)." *Brunelle* v. *Lynn Pub. Schools*, 433 Mass. 179, 182 (2001).

The plaintiff's claims founder on the first requirement and we need not reach the other two. She has not, as required, "clearly identified any 'secured right' with which [Trooper Cambria] interfered." See *Flesner* v. *Technical Communications Corp.*, 410 Mass. 805, 818 (1991).

As indicated earlier, G. L. c. 269, § 17, the hazing statute, is not applicable to the Academy, as it is not a student organization, but rather a school, an educational institution. Moreover, even if the statute were applicable, in order "to seek redress through [MCRA as under its Federal analog, 42 U.S.C.][10] § 1983 . . . a plaintiff must assert the violation of a federal [or State] *right*, not merely a violation of federal [or State] *law.*" *Blessing* v. *Free-stone*, 520 U.S. 329, 340 (1997) (emphasis in original). Our courts are "reluctant to infer a private cause of action from a statute in the absence of some indication from the Legislature supporting such an inference." *Loffredo* v. *Center for Addictive*

---

[10]"[T]he Legislature intended to provide a remedy under G. L. c. 12, § 11I, coextensive with 42 U.S.C. § 1983 . . . , except that the Federal statute requires State action whereas its State counterpart does not." *Batchelder* v. *Allied Stores Corp.*, 393 Mass. 819, 822-823 (1985).

*Behaviors*, 426 Mass. 541, 544 (1998). Moreover, "penal statutes [G. L. c. 269, § 17, is such a statute] have been construed as creating a new cause of action . . . if, and only if, that appears by express terms or by clear implication to have been the legislative intent." *Johnson* v. *United States Steel Corp.*, 348 Mass. 168, 169-170 (1964), quoting from *Mezullo* v. *Maletz*, 331 Mass. 233, 238 (1954). No such intent is evident in the hazing statute. "[I]t would be anomalous, on the facts of this case, to allow a remedy under the State Civil Rights Act where a legislative remedy was not made available under [c. 269, § 17]." *Willitts* v. *Roman Catholic Archbishop of Boston*, 411 Mass. at 210 n.11.

In addition to the hazing statute, the plaintiff cites to G. L. c. 149, §§ 3, 5, and 6, to sustain her claim that she has a secured right to a safe working environment. Section 3 provides for "inspection and investigation" by the Attorney General of "all places of employment," and § 5 permits him or her to investigate conditions existing in any industry, and to receive complaints "concerning alleged violations of any laws enforced under his direction." Section 6 permits "any person aggrieved" by the violation of any "rule, regulation or requirement made by the department" of labor and workforce development to file a complaint in the District Court. Assuming, without deciding, that such a violation creates a secured right, but see *Loffredo* v. *Center for Addictive Behaviors*, 426 Mass. at 545-546, the plaintiff has not pointed to any rule or regulation that has been violated. See *Collins* v. *Harker Heights*, 503 U.S. 115, 126-129 (1992) (no Federal due process right to a safe working environment; such a claim is "unprecedented").

The plaintiff has made no argument within the meaning of Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975), in support of her contention that she is entitled to appropriate medical care under the MCRA, and, accordingly, we do not reach that claim.

Since there are here no genuine issues of material fact, and the record as presented shows that the defendants are entitled to judgment as matter of law, the motion judge was correct in granting summary judgment for the defendants.

*Judgments affirmed.*