NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-754

COMMONWEALTH

vs.

BPI CONSTRUCTION MANAGEMENT, INC.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant, BPI Construction Management, Inc. (BPI), appeals from summary judgment entered against it in the Superior Court on the Commonwealth's claims for violations of the Massachusetts False Claims Act (MFCA), G. L. c. 12, § 5B (a) (1)-(2) (2012). The judgment total was $926,898.06, including damages of $513,079.84, filing fees of $280.00, punitive damages of $226,752.00, and attorney's fees of $72,000.00. Because we discern no error in the motion judge's denials of BPI's motions to dismiss the complaint under Mass. R. Civ. P. 9 (b), 365 Mass 751 (1974), or to join additional parties to the action, and we conclude that the Commonwealth was entitled to summary judgment on liability and damages in the

amount calculated by the judge, we affirm the judgment and the order denying the defendant's motion for relief from the judgment.

Background. 1. Facts. The following facts are drawn from the summary judgment rulings and, except as noted, are not disputed.[1]

a. Westport project. In June 2017, general contractor M. O'Connor Contracting, Inc. (O'Connor), awarded BPI, a construction company subject to the Prevailing Wage Law, G. L. c. 149, §§ 27, 27B, the carpentry subcontract for a public works contract in Westport. The terms of the subcontract required BPI to "comply with and be bound by all statutes, rules and regulations governing wage rates," and provided that the Westport project "is a public job and prevailing wage rates apply and weekly payroll reports are required." The schedule of prevailing wage rates at the Westport project for carpenters was $66.68 per hour.

BPI hired Superior Carpentry, Inc. (Superior), to provide the labor for BPI's portion of the Westport project. BPI's subcontract with Superior required Superior to "keep true and accurate payroll records for every such person under their employ and submit certified weekly payroll forms together with a

_____

[1] We reserve certain facts for later discussion.

2

Statement of Compliance to [Westport] with the appropriate prevailing rate."

Superior hired carpenters for the Westport project through ICNG Contractor, Inc. (ICNG), and paid the carpenters at a rate below the prevailing wage. BPI did not review records, inquire, or take any other steps to verify that Superior was complying with the Prevailing Wage Law, however.[2] Superior workers ultimately performed 4,756.5 hours of work on the Westport project under the subcontract with BPI.

To obtain payment, BPI was required to ensure that O'Connor was provided with weekly certified payroll reports (CPRs) documenting and certifying that all carpenters performing work under BPI's subcontract with Superior were being paid in compliance with the Prevailing Wage Law. During the Westport project, BPI used twenty-two completed CPRs from Superior to obtain payment. These CPRs falsely stated that the laborers were paid in compliance with the Prevailing Wage Law.

b. <u>Middleborough project</u>. In September 2017, A.P. Whitaker & Sons, Inc. (Whitaker), awarded BPI the carpentry subcontract for a public works project in Middleborough. As with the Westport project, the contract for the Middleborough

---

[2] Indeed, halfway through the Westport project, the wages paid, as reported by Superior, amounted to more than Superior's entire subcontract price.

3

project required that the workers employed under it be paid at the prevailing minimum wage rate, which was again $66.68 per hour. BPI subcontracted Superior to provide the labor and required Superior to keep true and accurate records and to pay prevailing wages. Superior again hired workers from ICNG. These laborers worked 2,237.5 hours on the Middleborough project.

Once again, the workers were not paid the prevailing wage, although Superior completed ten CPRs that falsely stated otherwise. BPI was required to, and did, use these CPRs to obtain payment from Middleborough, but it still did not supervise Superior's work and did not review records, make inquiries, or verify Superior's compliance with the Prevailing Wage Law.

2. <u>Procedural history</u>. In February 2018, the Fair Labor Division of the Massachusetts Attorney General's Office (AGO) received a complaint that the carpenters on the Westport project were not being paid the prevailing wage. The AGO investigated and, on December 13, 2021, filed this action against BPI (enforcement action). In response to the AGO's investigation, Superior admitted that it did not pay any worker the prevailing wage on either the Westport or the Middleborough projects. On December 21, 2021, Superior settled the Commonwealth's claims against it by agreeing to pay $256,539.92 in restitution (unpaid

4

wages), plus $284,000 in statutory penalties under the Massachusetts "wages and hour laws," see G. L. cc. 149, 151; MFCA.

In January 2022, BPI moved unsuccessfully to dismiss the Commonwealth's complaint on the grounds that the Commonwealth failed to join indispensable parties (namely, Superior, O'Connor, and Whitaker). In denying BPI's motion, a Superior Court judge (first judge) concluded that the AGO had exclusive discretion to decide if and when to pursue an MFCA enforcement action.[3] In May 2022, the first judge then denied BPI's motion to add Superior, O'Connor, and Whitaker as third-party defendants, concluding that an MFCA defendant is not entitled to indemnification or contribution.

In September 2022, the Commonwealth moved for partial summary judgment on BPI's liability under §§ 5B (a) (1) and 5B (a) (2), for using the thirty-two false CPRs (that Superior had prepared) to obtain payment from the towns of Westport and Middleborough.[4] Citing to the undisputed evidence that (1) the

_____

[3] Alternatively, the first judge determined that BPI had not shown that the inclusion of the additional proposed defendants was required to accord "complete relief . . . among those already parties." Mass. R. Civ. P. 19 (a), 365 Mass. 765 (1974).

[4] BPI opposed the Commonwealth's motion and filed a cross motion for summary judgment, arguing that (1) where Superior had agreed to pay the restitution amount of $540,539.92, the effect of G. L. c. 231B, § 4 (a), was to reduce BPI's liability to

5

information Superior provided on the CPRs for the Westport and Middleborough projects was false and fraudulent; (2) BPI used those CPRs to obtain payment, with deliberate indifference or reckless disregard for their falsity; and (3) the false CPRs caused the general contractors to submit false claims to the towns, on December 15, 2022, a different Superior Court judge (second judge) allowed the Commonwealth's motion.

On February 13, 2023, BPI again moved to add Superior, O'Connor, and Whitaker as third-party defendants, this time asserting claims under G. L. c. 93A and, as to Superior only, claims for committing breaches of Superior's subcontract with BPI. The first judge denied the motion, concluding that it was simply a repackaging of BPI's earlier attempt to bring impermissible claims for indemnification and contribution.

The Commonwealth then moved for summary judgment for relief in July 2023.[5] The second judge allowed this motion in part, ordering BPI to pay $513,079.84 in compensatory damages and $72,000.00 in attorney's fees under G. L. c. 12, § 5B (a) (2),

---

zero; and (2) BPI was therefore entitled to judgment in its favor on liability.

[5] BPI also filed a second cross motion for summary judgment, which the Commonwealth opposed. Approximately ten days later, before the summary judgment motions were heard, BPI moved for reconsideration of the December 2022 partial summary judgment entered on its MFCA liability. The Commonwealth opposed that motion, as well, and the motion was denied by the second judge.

6

for the knowing use of false record material to a false or fraudulent claim.[6]  After the Commonwealth filed and served an additional motion documenting its calculation of statutory penalties, the second judge also assessed statutory penalties of $226,752.00.  Final judgment in the total amount of $926,898.06 entered in favor of the Commonwealth on October 30, 2023.[7]

On December 4, 2023, BPI moved for relief from judgment. The motion was denied on December 7, 2023, and BPI filed a notice of appeal on December 19, 2023.  On December 21, 2023, BPI filed a "corrected" motion for relief from judgment, which was denied on January 29, 2024.  On February 8, 2024, BPI filed an amended notice of appeal from, inter alia, the judgment and the denial of its motion for relief from judgment.[8]

Discussion.  Distilling BPI's more than twenty separate arguments to their essence, and limiting our consideration to preserved arguments supported by legal authority and appropriate

---

[6] BPI filed a motion to amend the order on the motion for summary judgment on relief, but the second judge denied that motion.

[7] The second judge's order denying BPI's first cross motion for summary judgment entered on November 13, 2023, nunc pro tunc to December 15, 2022.  The second cross motion for summary judgment was denied on September 1, 2023.

[8] The notice of appeal also identified a number of prejudgment orders, including those listed above.  See Mass. R. A. P. 3 (c) (1) (B), as appearing in 491 Mass. 1601 (2023).

record citations on appeal, we discern the following substantive challenges, none of which requires us to disturb the judgment against BPI.

1. _Joinder of O'Connor, Whitaker, and Superior_. a. _BPI's rule 12 (b) (7) challenge_. We are not persuaded that the first judge abused his discretion, see _Doull_ v. _Foster_, 487 Mass. 1, 22 (2021), by denying BPI's January 2022 motion to dismiss the complaint under Mass. R. Civ. P. 12 (b) (7), 365 Mass. 754 (1974). We, like the first judge, conclude that, in this enforcement action, the Attorney General had sole discretion over whom to name as a defending party. General Laws c. 12, § 5C (1), empowers the Attorney General to bring an enforcement action in response to alleged violations of §§ 5B to 5O; it does not require it to do so. See G. L. c. 12, § 5C (1) ("The attorney general shall investigate violations under sections 5B to 5O . . . . If the attorney general finds that a person has violated or is violating said sections 5B to 5O, inclusive, the attorney general may bring a civil action in superior court against the person"). BPI has not persuaded us that, as the prosecuting authority, the Attorney General could be compelled to add O'Connor, Whitaker, or Superior as defendants to the enforcement action. See _Commonwealth_ v. _Newton N._, 478 Mass. 747, 755-756 (2018), quoting _Shepard_ v. _Attorney Gen._, 409 Mass. 398, 401 (1991) ("Judicial review of decisions which are within

8

the executive discretion of [a prosecutor] 'would constitute an intolerable interference by the judiciary in the executive department of the government and would be in violation of art. 30 of the [Massachusetts] Declaration of Rights'").

Furthermore, BPI has not demonstrated that the absence of any of those parties "impair[ed] or impede[d] [BPI's] ability to protect [its] interest" in the enforcement action. Mass. R. Civ. P. 19, 365 Mass. 765 (1974) (defining indispensable parties). See Raytheon Co. v. Continental Cas. Co., 123 F. Supp. 2d 22, 32 (D. Mass. 2000) (under cognate Federal rule, movant bears burden of showing why absent party should be joined). The evidence presented to the first judge did not show that O'Connor or Whitaker knew or should have known about the falsified CPRs and, although Superior did know that the CPRs were false, it acknowledged its liability before BPI's motion to dismiss was filed.

Finally, as we discuss, infra, we are not persuaded that BPI had any right to seek contribution from O'Connor, Whitaker, or Superior.

b. BPI's attempts to bring third-party contribution claims. We likewise discern no abuse of discretion in the first judge's denial of BPI's motions to add O'Connor, Whitaker, and Superior as third-party defendants. See Barbosa v. Hopper Feeds, Inc., 404 Mass. 610, 622 (1989) (abuse of discretion

9

standard). In its first motion to add O'Connor, Whitaker, and Superior, BPI sought to bring third-party claims for contribution and indemnification against those entities. In denying that motion, the first judge properly relied on Federal law interpreting the Federal False Claims Act (FCA) for guidance on the question whether BPI had a right of contribution or indemnification for the Commonwealth's MFCA claims, see, e.g., Rosenberg v. JPMorgan Chase & Co., 487 Mass. 403, 409 n.12 (2021); Scannell v. Attorney Gen., 70 Mass. App. Ct. 46, 49 n.4 (2007), and BPI has not persuaded us that the first judge erred in concluding that it had no such right. See United States v. Dynamic Research Corp., 441 F. Supp. 2d 259, 264 (D. Mass. 2006).

In a second motion to add the same entities as third-party defendants, BPI argued that it was entitled to bring "independent" claims under G. L. c. 93A, § 11, and (as to Superior) a breach of contract claim. Because we, like the first judge, conclude that the proposed claims were simply BPI's attempt to reframe its earlier claims for indemnification and contribution, we are satisfied that the first judge's denial of the second motion was correct. See Quinn v. Walsh, 49 Mass. App. Ct. 696, 704 (2000) ("We are not bound by the label [the party has] ascribed to the facts alleged, but look to the

10

allegations themselves to determine the cause of action" [citations omitted]).

In a similar vein, we agree with the Commonwealth's view that BPI's challenges to the second judge's entry of partial summary judgment in favor of the Commonwealth, and to the second judge's subsequent entry of summary judgment as to damages, are merely reframed arguments for contribution. Reviewing the second judge's first summary judgment determination de novo, see Gibney v. Hossack, 493 Mass. 767, 770 (2024), we are satisfied that judgment in favor of the Commonwealth on BPI's liability was proper. The Commonwealth's claims under the MFCA were not explicitly tort claims, nor were they tort claims "in essence." Thomas v. EDI Specialists, Inc., 437 Mass. 536, 539 (2002), citing Wolfe v. Ford Motor Co., 386 Mass. 95, 99 (1982). Because O'Connor, Whitaker, and Superior were thus not "joint tortfeasors" as to BPI, G. L. c. 231B, § 4, did not apply to this case and did not act to reduce BPI's damages by the amount of Superior's settlement payment.[9] See Tritsch v. Boston Edison Co., 363 Mass. 179, 182-183 (1973). Summary judgment on damages was proper, and the second judge correctly calculated

---

[9] Given our conclusion, we need not address the admissibility of a July 23, 2021 letter concerning the Commonwealth's settlement with Superior.

11

compensatory damages of $513,079.84, plus $72,000 in attorney's fees.

2. <u>Adequacy of the Commonwealth's complaint</u>. As part of its second cross motion for summary judgment, BPI argued that the Commonwealth's complaint failed to meet the particularity requirements of Mass. R. Civ. P. 9 (b), 365 Mass. 751 (1974) (rule 9 [b]). Rule 9 (b) provides, "[i]n all averments of fraud, . . . the circumstances constituting fraud[] . . . shall be stated with particularity."

The Commonwealth's complaint alleged that, between 2017 and 2018, BPI "us[ed], or caus[ed] to be created and used, at least [thirty-two] fraudulent CPRs," and that BPI was responsible for thirty-two false payment demands prepared by Superior.[10] Assuming without deciding that BPI's challenge to the particularity of the Commonwealth's fraud allegation was timely,[11] we are satisfied that, read as part of the entire

---

[10] BPI does not dispute that presentment of the CPRs was a requirement for its payment requests to both Westport and Middleborough. Because we conclude that the Commonwealth was not required to prove that BPI made the presentments (only that it was responsible for the false CPRs, and that it used those CPRs in its efforts to obtain payments under its contracts with each of the towns), BPI's argument that the second judge overlooked questions of material fact in granting summary judgment is unavailing.

[11] Because a rule 9 (b) challenge tests the adequacy of a plaintiff's fraud allegation, such arguments are (as the Commonwealth correctly notes) generally raised in motions to

12

complaint, the Commonwealth's allegations describing BPI's fraudulent conduct met the requirements of rule 9 (b), and made out a claim under G. L. c. 12, § 5B (a) (2).  See United States ex rel. Harris v. Bernad, 275 F. Supp. 2d 1, 6 (D.C. Cir. 2003) (to prove violation of Federal corollary of § 5B (a) (2), plaintiff must show, inter alia, that defendant knowingly used false record to create claim to obtain payment from government; proof that defendant made actual false record itself is not required).  Cf. United States v. Bornstein, 423 U.S. 303, 309, 313 (1976) (considering challenge to FCA prosecution based on defendant submitting false claim to government for payment).  Accordingly, the second judge did not err in rejecting BPI's rule 9 (b) challenge.

3.  Calculation of damages.  We review de novo the second judge's entry of summary judgment on the amount of damages for which BPI is liable.  See Auto Flat Car Crushers, Inc. v. Hanover Ins. Co., 469 Mass. 813, 820 (2014).  The second judge properly identified the underpayment to Superior's carpenters occasioned by BPI's fraudulent conduct -- $256,539.92 -- as the Commonwealth's "[a]ctual damages."  See United States ex rel. Concilio De Salud Integral De Loíza, Inc. v. J.C. Remodeling,

_____

dismiss.  See, e.g., Friedman v. Jablonski, 371 Mass. 482, 483 & n.2 (1976).  That was not the case here.

13

Inc., 962 F.3d 34, 42 (1st Cir. 2020).  Consistent with G. L.
c. 12, § 5B (a),[12] the second judge then trebled the actual
damages, arriving at a figure of $769,619.76.  The second
judge's decision to do so before reducing BPI's damages by the
compensatory amount of Superior's settlement ($256,539.92) was
correct, see Bornstein, 423 U.S. at 316-317, as was the second
judge's calculation of BPI's compensatory damages after that
reduction as $513,079.84.[13]  BPI was entitled to -- and obtained
-- a setoff equal to the amount of Superior's compensatory
settlement.[14]  See id.

_____

[12] As relevant here, one who violates G. L. c. 12, § 5B (a),
"shall be liable to the commonwealth . . . for a civil penalty
of not less than $5,500 and not more than $11,000 per violation,
. . . plus 3 times the amount of damages, including
consequential damages, that the commonwealth sustains because of
such violation."  G. L. c. 12, § 5B (a).

[13] This calculation, which reduced BPI's payment obligation
by the amount of compensatory damages to be paid by Superior
under its settlement agreement with the Commonwealth, reflected
a pro tanto approach.  See MFS Mun. Income Trust v. American
Med. Int'l, Inc., 751 F. Supp. 279, 282 (D. Mass. 1990) (pro
tanto rule provides nonsettling defendant with setoff in amount
of settlement).  To the extent that BPI argues otherwise, it is
mistaken.

[14] We are not persuaded that BPI was entitled to a setoff
for the amount Superior agreed to pay in penalties.  Such a
result would run counter to both the compensatory and punitive
purposes of the MFCA.  See Massachusetts v. Schering-Plough
Corp., 779 F. Supp. 2d 224, 234-235 (2011) (comparing
compensatory and punitive features of MFCA and FCA).

14

Furthermore, we are unpersuaded that the second judge abused her discretion by declining to consider records that BPI submitted in support of its attempt to modify the judgment for damages; the records were unauthenticated hearsay documents purportedly reflecting tax-withholding payments from Superior to a third party:  payroll company ADP.[15]  See generally Locator Servs. Group, Ltd. v. Treasurer & Receiver Gen., 443 Mass. 837, 865 (2005), quoting Madsen v. Erwin, 395 Mass. 715, 721 (1985) ("[h]earsay in an affidavit is unacceptable to defeat summary judgment").

As for BPI's remaining arguments, we have reviewed them all and find them to be without merit.  See Commonwealth v. Domanski, 332 Mass. 66, 78 (1954) ("Other points, relied on by the defendant[] but not discussed in this [decision], have not

---

[15] The fact that the hearsay records were attached to the affidavit of an investigator for the AGO did not transform the records into admissions of a party opponent.  Cf. Mass. G. Evid. § 801(d)(2) (2025).  Similarly, the affidavit did not purport to establish the attached documents as business records (and did not do so).  See id. at § 803(6)(A).

15

been overlooked.  We find nothing in them that requires discussion").

    <u>Conclusion</u>.  The judgment is affirmed, as is the order denying BPI's motion for relief from judgment.

<u>So ordered</u>.

By the Court (Hand, Grant &
  Wood, JJ.[16]),

*Paul Little*

Clerk

Entered:  June 20, 2025.

---

[16] The panelists are listed in order of seniority.