Raymond OBERG, Plaintiff,

v.

CITY OF TAUNTON, et al., Defendants.

Civil Action No. 12–10264–JLT.

United States District Court, D. Massachusetts.

Sept. 25, 2013.

Lynn A. Leonard, Melrose, MA, for Plaintiff.

John J. Davis, Jill M. Murray, Pierce, Davis & Perritano, LLP, Gareth W. Notis, Morrison, Mahoney, & Miller LLP, Boston, MA, for Defendants.

## MEMORANDUM

TAURO, District Judge.

### I. *Introduction*

Pending before this court are Defendant Joshua Acerra's *Motion to Dismiss for Failure to State a Claim* [# 18], the City of Taunton's ("City") *Motion to Dismiss for Failure to State a Claim* [# 21], and the Taunton Police Department, the Taunton City Council, Acting Police Chief John Reardon, Lieutenant Paul Roderick, and David Potter, Jason Buffington, Sherri Costa–Hanlon, Thomas Hoye, Deborah Carr, Jordan Fiore, Mansour Barbour, Gerald Croteau, and Andrew Marshall's (collectively: "City Council Defendants") *Motion to Dismiss for Failure to State a Claim* [# 23].[1]

For the reasons and to the extent stated below, the three motions to dismiss are ALLOWED IN PART AND DENIED IN PART.

### II. *Background*

#### A. *Factual Background* [2]

In September 2007, Defendant Acerra worked as an employee of the Massachusetts Department of Correction ("DOC") and was seeking employment with the Taunton Police Department. Plaintiff, the Police Chief of the City at the time, initially assigned Captain Robert Smith to conduct a background investigation of Acerra. After receiving the file and consulting with City Solicitor Steven Torres, Acerra was hired as a probationary patrolman upon Plaintiff's recommendation even though he had a prior a domestic restraining order against him and an arrest for underage drinking. Acerra was hired as a proba-

---

1. City Council Defendants are all elected members of the Municipal Council of the City of Taunton. Am. Compl. [# 17], ¶¶ 6–14.

2. Unless otherwise indicated, all factual allegations are taken from the *Amended Complaint* [# 17]. Citations to the record are provided only for direct quotes.

tionary police officer due to the "lax standards of the Municipal Council" and passing a background check with his former employer, the DOC.[3]

In June 2008, Reardon began investigating Acerra for his connection to drug activity at a triple-decker house in East Taunton. He spoke with Plaintiff, who then contacted the city clerk, Rosemarie Blackwell. Blackwell was advised that the information was sensitive in nature and was asked to keep the information confidential. In July, Reardon informed Plaintiff that no activity had been observed at the house.

At or around this time period, Reardon requested Acerra's personnel file. Thereafter, Reardon informed Plaintiff "that it appeared there had not been a complete background investigation and that people were talking that Acerra had been fired from DOC."[4] The DOC was contacted and the rumors about Acerra's termination were substantiated. Records received from the DOC revealed that the Police Department never contacted the DOC as part of Acerra's initial background check. In early September 2008, Acerra telephoned Plaintiff and told him about his upcoming graduation from the Police Academy. Plaintiff asked Acerra to contact Reardon, at which point Acerra asked if it was about the investigation. Acerra later revealed to investigators Reardon and Roderick that the City Clerk informed him of an internal investigation. The revelation led Plaintiff to prepare a written report and to refer the matter to Torres

for an internal investigation of Acerra and the City Clerk, Blackwell.

On September 22, 2008, Plaintiff reviewed Acerra's firearm application and found a number of incorrect answers. On September 23, 2008, Reardon and Plaintiff interviewed Acerra about his answers but he offered conflicting statements.[5] On September 24, 2008, Plaintiff met with Mayor Charles Crowley ("Mayor"). The Mayor instructed Plaintiff to turn the investigation over to Torres. Plaintiff complied and on September 25, 2008, hand delivered his report on Acerra to Torres. Later in December 2008, Detective Robert Kramer notified Plaintiff by e-mail about "information from the State Police on Acerra allegedly leaking information on a drug investigation."[6] Thereafter, Reardon and Torres placed Acerra on administrative leave.

In late January 2009, a three-member panel of the City Council offered to allow Acerra to resign instead of facing drug charges. Plaintiff provided background information about the allegations against Acerra at the hearing. Acerra rejected the offer. The hearing continued on February 13, 2009, at which point the three-member panel voted to send the matter to the City Council with a recommendation to terminate Acerra. Plaintiff was the panel chair at the hearing.

On February 17, 2009, the City Council conducted the first of several "open hearings." During the first hearing, Acerra alleged that Plaintiff withheld evidence during the internal investigation of Acerra.[7] Reading from a prepared statement,

---

3. Am. Compl. [# 17], ¶ 22.

4. Am. Compl. [# 17], ¶ 34.

5. Subsequently, on May 8, 2009, "Acerra received a one year pre-trial probation on the charges against him for false answers on a firearms application," as well as for "extor-

tion of money by threats of bodily harm." Am. Compl. [# 17], ¶ 116.

6. Am. Compl. [# 17], ¶ 58.

7. A DVD was taken of Acerra's September 2008 interview. Police Information Technologies of the Police Department redacted the DVD to include only the portion of the inter-

and not under oath, Acerra also stated that he was "subject to retaliation for exposing an affair between [Plaintiff] and the City Clerk and for truthfully reporting that the City Clerk alerted him to the ongoing investigation."[8] The City Council also allowed Acerra's request to sequester witnesses.

At the second open hearing on March 3, 2009, Roderick, a sergeant with the Police Department,[9] and Defendant Andrew Marshall, a City Councilor, accused Plaintiff of obstructing the investigation and tampering with the DVD evidence.[10] At the third hearing on March 10, 2009, the City Council went into "executive session," during which the City Clerk, Rosemarie Blackwell, was called to testify but did not have any information relevant to the charges. Plaintiff did not attend the hearing due to medical issues. Returning to the public session, the City Council openly debated Plaintiff's medical condition and his failure to appear at the hearing.[11] The same subject matter was discussed at a fourth hearing on March 17, 2009. The City Council also sought an order from the Superior Court compelling Plaintiff's appearance

and testimony, but the court denied the motion on procedural grounds.

Plaintiff appeared and testified at the fifth hearing on March 24, 2009. At this hearing, the City Council reprimanded Plaintiff for the poor initial background check of Acerra and for following Torres' advice rather than bringing the matter to the attention of the City Council. The Council then voted to terminate Acerra. Defendant Jordan Fiore,[12] a City Councilor, acknowledged that "Acerra and his attorney went out of their way to personally humiliate [Plaintiff] and his family" during the first hearing on February 17, 2009.[13]

At or around the time of the March 24, 2009 hearing, the City Council placed Plaintiff on administrative leave.[14] In or around April 2009, Reardon and Roderick filed a grievance challenging overtime hours submitted by two police sergeants for work performed on the Acerra investigation. The City Council voted on the grievance even though the Police Chief has the authority to assign police officers to various investigations.[15]

Also during this time, the City Council considered a motion by a councilman to request that the United States Attorney's

view regarding Accera's termination from the DOC. Am. Compl. [# 17], ¶ 70.

8. Am. Compl. [# 17], ¶ 82.

9. Although named in the amended complaint as a lieutenant, Roderick was "at all times relevant to this action a sergeant." Am. Compl. [# 17], ¶ 4.

10. Plaintiff alleges a procedural due process claim based in part on the City Council allowing the unsworn and false testimony. Plaintiff submits he was never given notice or an opportunity to rebut these and other false accusations of criminal conduct. Am. Compl. [# 17], ¶¶ 87–89, 134–35.

11. The sequestration purportedly denied Plaintiff "meaningful legal representation" and an opportunity to challenge the allega-

tions against him. Am. Compl. [# 17], ¶¶ 133, 139. Plaintiff alleges that the City failed to go into executive session to discuss his medical condition. Am. Compl. [# 17], ¶ 138.

12. The amended complaint spells Fiore's first name as both "Jordon" and "Jordan."

13. Am. Compl. [# 20], ¶ 102.

14. Contrary to Defendant's position, the amended complaint does not state that Plaintiff was placed on paid administrative leave.

15. Elsewhere, the amended complaint notes that, "Reardon was further rewarded by the City Council through a grievance resulting in payment for work not performed." Am. Compl. [# 17], ¶ 151.

Office and the Attorney General of Massachusetts conduct an investigation into Acerra's hiring, "the apparent improper disclosure of sensitive police information," and other matters.[16] The Council then voted to form a committee to handle the investigation. In April 2009, the City Council authorized $25,000 for an investigation, including the hiring of an independent investigator. The Mayor refused to authorize the funding. Plaintiff retired on May 15, 2009 because of "statements made publicly and privately that the City intended to terminate his employment."[17]

B. *Procedural History*

On August 30, 2012, Plaintiff filed a thirteen-count *Amended Complaint* [# 17]. The caption of the case in the amended complaint identifies the "Taunton Police Department" and the "Taunton City Council" as defendants. The City points out that these defendants have no legal existence or liability separate from the City.[18]

■ The body of the amended complaint does not identify these entities under the section applicable to "PARTIES." The heading of each count identifies the defendant against whom Plaintiff brings the claim. None of the headings in any of the counts name the Taunton Police Department or the Taunton City Council. Federal Rule of Civil Procedure 10(a) instructs that the caption of a complaint "must name all the parties." Where, as here, "the identity of the defendants is unclear from the caption, courts may look to the body of the complaint to determine who the intended and proper defendants are."[19] The body of the amended complaint clarifies that neither the Taunton Police Department nor the Taunton City Council are defendants in this action. In any event, as pointed out by the City, the Taunton Police Department and the Taunton City Council "have no legal existence or liability separate from the City."[20] Plaintiff concedes this issue.[21]

The amended complaint asserts: civil rights claims under 42 U.S.C. § 1983 against all Defendants (Count One); conspiracy pursuant to 42 U.S.C. § 1986 and Massachusetts common law against all Defendants (Count Two);[22] violation of free speech under the First Amendment against all Defendants (Count Three); state constitutional claims under the Massachusetts Declaration of Rights, Articles 29 and 30, against the City and the City Council Defendants (Count Four); procedural due process violations under the Fourteenth Amendment against the City and the City Council Defendants (Count Five); defamation against Reardon, Roderick, and Acerra (Count Six); intentional invasion of privacy against all Defendants (Count Seven); retaliation under the Massachusetts Civil Rights Act, sections H and

16. Am. Compl. [# 17], ¶ 106.

17. Am. Compl. [# 17], ¶ 116.

18. Mem. Supp. Mot. Dismiss [# 22], 2 n. 2.

19. *Trackwell v. U.S. Gov't*, 472 F.3d 1242, 1243–44 (10th Cir.2007); *cf. Cortes–Rivera v. Dep't of Corr. & Rehab.*, 626 F.3d 21, 28 (1st Cir.2010) (examining "plain language" of complaint and its structure to determine whether it raised a claim).

20. Mem. Supp. Mot. Dismiss [# 22], 2 n. 2.

21. Mem. Opp. [# 29], 12. In the event Plaintiff intended to name these entities as defendants, this court will afford him fourteen days from the date of this opinion to seek leave to amend the amended complaint to include these entities as defendants. Absent such a motion, the issue is waived.

22. The City, City Council Defendants, Reardon, Roderick, and Acerra do not address the Massachusetts common law conspiracy claim in Count Two. It therefore remains in this action.

I of Massachusetts General Laws chapter 12 ("MCRA") against all Defendants (Count Eight); retaliation in violation of section 185 of Massachusetts General Laws chapter 149 against the City and the City Council Defendants (Count Nine); constructive termination against the City and the City Council Defendants (Count Ten); intentional interference with contractual relations against the City Council Defendants, Reardon, Roderick, and Acerra (Count 11); intentional infliction of emotional distress against the City Council Defendants, Reardon, Roderick, and Acerra (Count 12); and breach of contract against the City (Count 13). Defendants seek to dismiss all counts.

## III. *Discussion*

### A. *Standard of Review*

To survive a motion to dismiss, a complaint must contain sufficient facts, accepted as true, to "state a claim to relief that is plausible on its face."[23] While "not equivalent to 'a probability requirement,' the plausibility standard 'asks for more than a sheer possibility that a defendant has acted unlawfully.'"[24] "[A]ccepting as true all well-pleaded facts in the complaint and making all reasonable inferences in the plaintiff's favor,"[25] the "factual allegations 'must be enough to raise a right to relief above the speculative level.'"[26] "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[27] "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal."[28]

In deciding a motion to dismiss, this court is limited to the "facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint, and matters of which judicial notice may be taken."[29]

### B. *Rule 8(a)*

Defendants allege that the amended complaint does not comply with Rule 8 of the Federal Rules of Civil Procedure. Specifically, Defendants challenge the amended complaint as "disorganized, jumbled and redundant" and assert that it is unclear exactly which claims are asserted against which defendant.[30] In response, Plaintiff asserts that the length of the amended complaint is necessary "to satisfy the stringent requirements for pleading a viable claim under § 1983," notably the "particularity" requirement.[31] Plaintiff also asserts that each count "designate[s] with specificity" which counts correspond to which defendants.[32]

Rule 8 requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled

---

**23.** *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 547, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

**24.** *Boroian v. Mueller,* 616 F.3d 60, 65 (1st Cir.2010) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)) (internal quotation marks omitted).

**25.** *Id.* at 64.

**26.** *Gorelik v. Costin,* 605 F.3d 118, 121 (1st Cir.2010) (quoting *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955).

**27.** *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937.

**28.** *S.E.C v. Tambone,* 597 F.3d 436, 442 (1st Cir.2010).

**29.** *Nollet v. Justices of the Trial Court,* 83 F.Supp.2d 204, 208 (D.Mass.2000).

**30.** Mem. Supp. Mot. Dismiss [# 19], 4.

**31.** Mem. Opp. [# 29], 10.

**32.** Mem. Opp. [# 29], 10.

to relief."[33] "[A]ll that the Rules require is a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."[34] The standard is not demanding and, contrary to Plaintiff's position, it is not demanding with respect to a § 1983 claim.[35] Thus, while a longer, verbose complaint is not preferable, it is not fatal. The amended complaint clarifies each count starting at paragraph 188. In particular, the heading of each count identifies in bold text the cause of action and the defendants named in the count. Each count also includes a short parenthetical identifying the elements of the cause of action. The pleading therefore satisfies Rule 8.

## C. *Whistleblower Claim*

In Count Nine, Plaintiff asserts that he was the subject of retaliation under section 185 of Massachusetts General Laws chapter 149 ("whistleblower statute").[36] Plaintiff submits that he "disclosed the hiring of a rogue police officer by the City of Taunton" and "suffered retaliatory action when the City Council suspended him."[37] The City and City Council Defendants contend that Plaintiff fails to assert a "disclosure" within the meaning of the statute, the claim is untimely, and the statute's exclusivity clause bars the other state law claims against the City.

In order to prevail under the whistleblower statute, a plaintiff must prove he was discharged, suspended, or demoted, or that "other adverse employment action [was] taken against" him due to his disclosure or threat of disclosure to a "supervisor or to a public body [of] an activity, policy or practice of the employer . . . that the [plaintiff] reasonably believes is in violation of a law . . . or which the [plaintiff] reasonably believes poses a risk to public health, safety or the environment."[38] The whistleblower statute gives an employee a private right of action against a public employer if the employer takes retaliatory action against the employee for engaging in protected activities.[39]

■ The City and City Council Defendants submit that, even liberally reading the amended complaint, it does not identify the "disclosure" that Plaintiff made and the activity or procedures he believed violated the law. Plaintiff alleges that the disclosure of Acerra's conduct to Torres and to the City Council resulted in retaliatory action against Plaintiff in the form of suspension and eventual "constructive termination." The disclosure argument therefore does not provide a basis to dismiss the claim.

In addition to the "disclosure" argument, the City and City Council Defendants maintain that the two-year statute of limitations applicable to whistleblower claims bars the whistleblower claim

---

**33.** Fed.R.Civ.P. 8(a)(2).

**34.** *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)) (internal quotation marks omitted).

**35.** *See Iacobucci v. Boulter*, 193 F.3d 14, 19 (1st Cir.1999) (describing Rule 8 as setting out "undemanding criterion vis-à-vis" a section 1983 claim).

**36.** Am. Compl. [# 17], ¶¶ 238–42.

**37.** Opp. Mot. Dismiss [# 31], 10.

**38.** Mass. Gen. Laws ch. 149, § 185(a)(5), (b)(1).

**39.** *See Bennett v. City of Holyoke*, 362 F.3d 1, 5 (1st Cir.2004) (citing Mass. Gen. Laws ch. 149, § 185(d)).

against them. Plaintiff relies on the continuing violation doctrine as a means to avoid the limitations bar. The whistleblower statute contains its own statute of limitations in subsection (d).[40] It provides that "[a]ny employee or former employee aggrieved of a violation of this section may, within two years, institute a civil action in the superior court."[41]

Plaintiff instituted this action by filing the original complaint on February 10, 2012. The retaliation against Plaintiff took place during the February and March 2009 City Council hearings and led to the City Council's vote to fire Acerra and place Plaintiff on administrative leave. The retaliation culminated in Plaintiff's decision to retire on May 15, 2009.[42] Plaintiff therefore missed the statutory deadline by at least nine months.

Acknowledging this oversight, Plaintiff argues that the "retaliation against [him] continued through negative media coverage, even after he was terminated."[43] He also asserts that the delay was not unreasonable because he was attempting to resolve the dispute. The only example he provides of his seeking to resolve the dispute is the November 26, 2010, "demand letter."[44]

■■■ The continuing violation doctrine "recognizes that some claims of discrimination involve a series of related events that have to be viewed in their totality in order to assess adequately their discriminatory nature and impact."[45] " 'Although the limitations clock generally starts with the commission of a discriminatory act, a true continuing violation rewinds the clock for each discriminatory episode along the way.' "[46] The doctrine often applies to those cases where the challenged behavior, taken as a whole, constitutes a pattern of mistreatment.[47] It requires the plaintiff to establish that "at least one discriminatory act occurred within" the limitations period to anchor the earlier untimely discriminatory acts.[48] In addition, the timely discriminatory act must "have a substantial relationship" to the untimely discriminatory acts.[49] Finally, the earlier, untimely discriminatory acts must not trigger the plaintiff's "awareness and duty to assert his rights."[50]

■■■ The doctrine also typically involves the creation of a hostile work envi-

---

40. *See* Mass. Gen. Laws ch. 149, § 185(d).

41. *Id.*

42. Am. Compl. [# 17], ¶ 116.

43. Opp. Mot. Dismiss [# 31], 12.

44. Am. Compl. [# 17], ¶ 126; Opp. Mot. Dismiss [# 31], 12.

45. *Cuddyer v. Stop & Shop Supermarket Co.,* 434 Mass. 521, 750 N.E.2d 928, 936 (2001); *see also Silvestris v. Tantasqua Reg'l Sch. Dist.,* 446 Mass. 756, 847 N.E.2d 328, 338 (2006).

46. *Cuddyer,* 750 N.E.2d at 936 (quoting *Mack v. Great Atl. & Pac. Tea Co.,* 871 F.2d 179, 183 (1st Cir.1989)) (internal quotation marks omitted).

47. *See Diaz v. Jiten Hotel Mgmt., Inc.,* 671 F.3d 78, 85 (1st Cir.2012) ("Under Massachusetts law, where a plaintiff alleges a pattern of discriminatory conduct, ... the continuing violation doctrine applies." (citing *Pelletier v. Town of Somerset,* 458 Mass. 504, 939 N.E.2d 717, 731 (2010))); *Cuddyer,* 750 N.E.2d at 937–39.

48. *Ocean Spray Cranberries, Inc. v. Mass. Comm'n Against Discrimination,* 441 Mass. 632, 808 N.E.2d 257, 266 (2004); *Cuddyer,* 750 N.E.2d at 936–38; *see also Mack,* 871 F.2d at 183.

49. *Ocean Spray,* 808 N.E.2d at 266.

50. *Id.* at 266–67 (internal quotation marks omitted).

ronment that itself is discriminatory.[51] The whistleblower statute, which proscribes an employer's retaliatory action against an employee, falls comfortably within this framework. Inasmuch as the statute's language does not expressly bar the doctrine's application, it is appropriate to consider its application to the allegedly unlawful retaliatory conduct of the City and City Council Defendants. "[I]t is the nature of the unlawful conduct alleged by the plaintiff, independent of the precise formulation of his claim, that allows a plaintiff to invoke an exception to the limitations period for a continuing violation."[52] Notably, the doctrine does not apply to a discrete discriminatory act such as a denial of "an employee's request for a reasonable accommodation."[53] Unlawful workplace retaliation, like that alleged here, "may involve a discrete and identifiable adverse employment decision," such as a "discharge or demotion," or "it may also consist of a continuing pattern of behavior that is, by its insidious nature, linked to the very acts that make up a claim of hostile work environment."[54] This case implicates the former.

 Plaintiff alleges that the City and City Council Defendants forced his constructive discharge for seeking to terminate Acerra and reporting Acerra's misconduct to Torres and the City Council.

The City Council voted to place Plaintiff on administrative leave in late March 2009 and ordered another officer to strip Plaintiff's "badges, guns, computers, access to the station and his police car."[55] The retaliation culminated in Plaintiff's decision to retire on May 15, 2009. The discrete act of being forced to retire triggered Plaintiff's awareness and duty to assert his rights.[56]

 Plaintiff relies on *Cuddyer* to argue that his delay in filing suit was reasonable because he was attempting to resolve the matter without litigation by sending the November 2010 demand letter. This reliance is misplaced. *Cuddyer* was a hostile work environment case that, unlike the case at bar, did not involve a discrete discriminatory act. Plaintiff's argument based on negative media coverage is also misguided. The negative media coverage after Plaintiff's constructive termination in May 2009 was not a discriminatory act within the two-year time period.[57] It was simply the continuing effect of the untimely retaliatory misconduct.

The two-year limitations period therefore expired in May 2011. The whistleblower claim against both the City and City Council Defendants in Count Nine is therefore untimely and subject to dismissal.[58]

---

**51.** *Clifton v. Mass. Bay Transp. Auth.*, 62 Mass.App.Ct. 164, 815 N.E.2d 614, 620 (2004); *accord Ingram v. Brink's, Inc.*, 414 F.3d 222, 229 n. 9 (1st Cir.2005).

**52.** *Clifton v. Mass. Bay Transp. Auth.*, 445 Mass. 611, 839 N.E.2d 314, 318 (2005).

**53.** *Ocean Spray*, 808 N.E.2d at 268; *see also Everett v. 357 Corp.*, 453 Mass. 585, 904 N.E.2d 733, 751 (2009) ("Ordinarily the decision to terminate or the failure to rehire an employee is considered a discrete, separate act that does not draw other allegedly discriminatory acts into its scope....."); *Silvestris*, 847 N.E.2d at 338.

**54.** *Clifton*, 839 N.E.2d at 318.

**55.** Am. Compl. [# 17], ¶ 107.

**56.** *See Clifton*, 839 N.E.2d at 318 (citing discharge as an example of a discrete act).

**57.** *See Ocean Spray*, 808 N.E.2d at 266 (requiring a plaintiff to establish that "at least one discriminatory act occurred within" the limitations period).

**58.** This ruling obviates the need to address City Council Defendants' argument that the whistleblower statute bars liability against individual supervisors. Mem. Supp. Mot. Dismiss [# 24], 3–4.

■ The City and City Council Defendants next submit that the whistleblower statute's waiver or exclusivity clause "bars all other state and common law claims against the City." [59] The provision reads as follows:

Nothing in this section shall be deemed to diminish the rights, privileges or remedies of any employee under any other federal or state law or regulation, or under any collective bargaining agreement or employment contract; except that the institution of a private action *in accordance with subsection (d)* shall be deemed a waiver by the plaintiff of the rights and remedies available to him, for the actions of the employer, under any other contract, collective bargaining agreement, state law, rule or regulation, or under the common law. [60]

The waiver under subsection (f) ordinarily extends "to related claims seeking damages essentially for the same conduct … that constituted the core retaliation for the whistleblowing." [61]

■ In the case at bar, however, Plaintiff did not institute the whistleblower claim "in accordance with subsection (d)." [62] Subsection (d) is the statute of limitations provision that allows an aggrieved employee to file a civil action within two years. [63] As explained above, Plaintiff instituted suit outside the two-year time frame.

Statutory interpretation "always starts with the language of the statute itself." [64] Typically, "the ordinary meaning of the statutory language" applies. [65] "[R]esort to extrinsic aids to statutory construction (such as legislative history)" is appropriate "only when the wording of the statute is freighted with ambiguity or leads to an unreasonable result." [66] No such ambiguity exists and no unreasonable result obtains. Subsection (f)'s precise reference to subsection (d), which, in turn, contains the caveat of instituting the civil action "within two years," makes the waiver provision inapplicable. The limited reach of subsection (f)'s waiver clause is also evident in the warning that "[n]othing in this section

---

**59.** Mem. Supp. Mot. Dismiss [# 24], 2, 5. The supporting memorandum expressly identifies "counts VII, X, XI, XII and XIII" as the counts subject to dismissal. Mem. Supp. Mot. Dismiss [# 24], 6. The memorandum also identifies by cause of action the following claims as subject to dismissal based on the exclusivity clause: "breach of contract, invasion of privacy, defamation, intentional interference with contractual relations, and intentional infliction of emotional distress." Mem. Supp. Mot. Dismiss [# 24], 6. The intentional infliction of emotional distress claim in Count 12 and the defamation claim in Count Six are not brought against the City. Because "all state and common law claims against the City" encompasses the Massachusetts Declaration of Rights Act claims in Count Four and the statutory retaliation claim in Count Eight in addition to the foregoing claims against the City, this court construes the exclusivity argument as seeking to dismiss Counts Four, Seven, Eight, Ten, Eleven, and Thirteen against the City.

**60.** Mass. Gen. Laws ch. 149, § 185(f) (emphasis added).

**61.** *Bennett v. City of Holyoke*, 230 F.Supp.2d 207, 220 (D.Mass.2002); *see also Bolduc v. Town of Webster*, 629 F.Supp.2d 132, 156 (D.Mass.2009) (having chosen to proceed with the whistleblower claim, plaintiff waived Massachusetts Civil Rights Act claim against his employer).

**62.** Mass. Gen. Laws ch. 149, § 185(f).

**63.** *Id.* § 185(d).

**64.** *Matamoros v. Starbucks Corp.*, 699 F.3d 129, 134 (1st Cir.2012).

**65.** *Id.* ·

**66.** *Id.*

shall be deemed to diminish" an employee's rights under any other federal or state law.[67]

The exclusivity argument based on subsection (f) accordingly does not provide a basis to dismiss counts Four, Seven, Eight, Ten, Eleven, or Thirteen against the City.

### D. Municipal Liability

The City also seeks to dismiss all the § 1983 claims in counts One, Three, and Five due to the absence of any basis upon which to establish municipal liability. The City contends that Plaintiff has not pleaded a policy or custom of the City that deprived Plaintiff of a protected right or the necessary causal link.

▬▬ It is well established that a municipality is not liable for the tortious actions of its employees simply by virtue of the employment relationship.[68] Instead, to establish municipal liability, "the execution of a municipal policy or custom" must be "the cause of the relevant injury."[69] Municipal liability requires "both the existence of a policy or custom and a causal link between that policy and the constitutional harm."[70] The municipal policy may either be (1) an official policy articulated or adopted by a decisionmaker or (2) an unofficial custom as evidenced by widespread action or inaction.[71]

▬▬ "A single decision by a municipal policymaker constitutes official policy 'only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered.'"[72] "When determining whether a decisionmaker exercises final authority, '[c]ourts must look to state law, including valid local ordinances and regulations, for descriptions of the duties and obligations of putative policymakers in the relevant area at issue.'"[73]

Plaintiff's municipal liability theory is far from clear. His complaint references the City's deliberate indifference to wrongdoing by the City Council and Police Department in taking disciplinary actions against officers.[74] But Plaintiff's reply focuses on the fact that the City Council was a "final policymaker" and makes reference to the *City Council's* deliberate indifference.[75] Plaintiff further points out that the City Council gave Acerra a hearing even though probationary patrolmen are

---

67. Mass. Gen. Laws ch. 149, § 185(f).

68. *See Bd. of Cnty. Comm'rs v. Brown,* 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) ("We have consistently refused to hold municipalities liable under a theory of *respondeat superior.*"); *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Freeman v. Town of Hudson,* 714 F.3d 29, 38 (1st Cir.2013).

69. *DiRico v. City of Quincy,* 404 F.3d 464, 468 n. 12 (1st Cir.2005); *see also Santiago v. Fenton,* 891 F.2d 373, 381 (1st Cir.1989).

70. *Santiago,* 891 F.2d at 382; *see also City of Canton v. Harris,* 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

71. *See Fletcher v. Town of Clinton,* 196 F.3d 41, 55 (1st Cir.1999) (explaining that the plaintiff must show a policy officially adopted and promulgated, or a government custom).

72. *Freeman,* 714 F.3d at 38 (quoting *Pembaur v. City of Cincinnati,* 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986); *see also City of St. Louis v. Praprotnik,* 485 U.S. 112, 123, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988) ("[O]nly those municipal officials who have final policymaking authority may by their actions subject the government to § 1983 liability." (internal quotation marks omitted)).

73. *Freeman,* 714 F.3d at 38 (alteration in original) (quoting *Walden v. City of Providence,* 596 F.3d 38, 56 (1st Cir.2010)) (internal quotation marks omitted).

74. Am. Compl. [# 17], ¶ 154.

75. Mem. Opp. Mot. Dismiss [# 29], 10–12.

not entitled to hearings prior to termination.[76] According to Plaintiff, the City Council then allowed Acerra to make false and defamatory accusations against him. Because Plaintiff is not alleging a failure to train and does not plead sufficient information regarding "deliberate indifference" by the City, this court construes his theory as resting on the City Council as a final policymaker.

The amended complaint alleges that the City Council "is the appointing and disciplinary body for the City of Taunton."[77] As a "governmental body" within the meaning of Massachusetts General Laws chapter 39, section 23A, the City Council has the authority to convene public meetings after providing notice to consider dismissal of a public officer or employee or to hear complaints about a public officer or employee.[78] The City Council also has the authority, upon notice, to enter into an executive session to discuss the reputation or physical condition of a public officer or employee.[79]

 Given that the City Council had the power to call an executive session and failed to do so, serves as the disciplinary body for the City, and voted to place Plaintiff on administrative leave, Plaintiff has pleaded sufficient information at this juncture to plausibly conclude the City Council had policymaking authority in this area. Plaintiff's claims against the City in Counts One, Three, and Five are thus not subject to dismissal on this ground.

### E. *Official Capacity*

 The City Council Defendants, Roderick, and Reardon (collectively: "City Officials"), as well as Acerra, all named in their individual and official capacities, argue that because the individuals named in their official capacities are not legal entities separate from the City, an action against them is improper.[80] Plaintiff correctly concedes that the members of the City Council in their official capacities are the same as the City.[81] Plaintiff maintains that liability against the members of the City Council remains appropriate in their individual capacities. Paradoxically, however, he also opposes the immunity defense raised by the City Officials because he sued them in their official capacity.[82]

 "[I]t is well settled that neither a state agency nor a state official acting in his official capacity may be sued for dam-

---

76. *See Gonzalez v. Police Comm'r of Bos.,* 6 Mass.App.Ct. 873, 375 N.E.2d 342, 342 (1978) (concluding that probationary patrolman was not entitled to hearing under state law or Due Process Clause "before terminating his status as a probationary patrolman").

77. Am. Compl. [# 17], ¶ 131.

78. Mass. Gen. Laws ch. 39, § 23B. The former version of the Massachusetts open meeting law, Mass Gen. Laws ch. 39, §§ 23A–23C, was repealed and replaced, effective July 1, 2010. Because the meetings relevant to this case occurred prior to that time, this court applies the former version. *See McKenney v. Zoning Bd. of Appeals,* 84 Mass.App.Ct. 1105, 990 N.E.2d 1071, at *5 n. 13 (Mass.App.Ct. 2013).

79. Mass. Gen. Laws ch. 39, § 23B.

80. At the April 2013 hearing before Magistrate Judge Bowler, Defendant Acerra rested on the arguments made by the City. The City, in turn, raised and addressed the *Monell* argument at the hearing. Accordingly, notwithstanding the absence of such an argument in Acerra's memorandum, Acerra seeks dismissal of the official capacity claims brought against him.

81. Mem. Opp. Mot. Dismiss [# 29], 12.

82. Suppl. Opp. Mot. Dismiss [# 39].

ages in a § 1983 action."[83] The City Officials and Acerra, acting in their official capacities as members of the City Council or the Taunton Police Department, are thus immune from suit for monetary damages under section 1983. An action against the City Officials and Acerra in their individual capacities, however, remains viable. "[U]nder § 1983, a plaintiff may sue a [governmental] officer in [her] individual capacity for alleged wrongs committed by the officer in [her] official capacity."[84] The amended complaint denotes that Plaintiff is suing the City Officials and Acerra in their official as well as their individual capacities. The § 1983 claims against the City Officials in their individual capacities therefore survive.

### F. Absolute Immunity

▋ Defendants argue that their statements at the termination hearings before the City Council were entitled to absolute immunity because the hearings were quasi-judicial in nature.[85] The City contends that this requires dismissal of Counts One, Two, Three, and Six. Statements made during administrative adjudications may be protected by absolute privilege when the proceeding contains sufficient safeguards.[86] Whether a particular proceeding is deemed quasi-judicial turns on whether the "safeguards built into the hearing process serve to reduce the need for tort actions" to protect against "injurious statements or testimony."[87]

▋ Plaintiff alleges that Defendants were allowed to testify about Plaintiff's actions and character without notice, opportunity to examine evidence, cross-examine witnesses, or present his own evidence.[88] Plaintiff also contends that Acerra was allowed to testify about Plaintiff without being properly sworn in.[89] Finally, Plaintiff suggests that there were no established rules or regulations governing the proceeding.[90] While there is some indication from the pleadings that there were rules governing the termination hearings, the exact nature of those rules is unclear. There is thus insufficient information for this court to dismiss Counts One, Two, Three, and Six on the basis of absolute immunity. Defendants are free to raise this issue against any remaining claims when there is a more developed record.

### G. Section 1983 Claims

The City, City Officials, and Acerra next move to dismiss the § 1983 First Amend-

83. Fantini v. Salem State Coll., 557 F.3d 22, 33 (1st Cir.2009) (quoting Wang v. N.H. Bd. of Registration in Med., 55 F.3d 698, 700 (1st Cir.1995)) (internal quotation marks omitted).

84. Powell v. Alexander, 391 F.3d 1, 23–24 (1st Cir.2004) (quoting Price v. Akaka, 928 F.2d 824, 828 (9th Cir.1990)).

85. See Mem. Supp. Mot. Dismiss [# 19], 11; Mem. Supp. Mot. Dismiss [# 22], 22–25; Mem. Supp. Mot. Dismiss [# 24], 8.

86. Butz v. Economou, 438 U.S. 478, 513–14, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978) ("[A]djudication within a federal administrative agency shares enough of the characteristics of the judicial process that those who participate in such adjudication should also be immune from suits for damages."); Fisher v. Lint, 69 Mass.App.Ct. 360, 868 N.E.2d 161, 168 (2007) ("The availability of an absolute privilege ... depends on whether the procedural safeguards during the ... proceedings adequately minimize the risk that defamation or other tortious conduct will occur.").

87. Fisher, 868 N.E.2d at 169–70 (citing Butz, 438 U.S. at 512, 98 S.Ct. 2894).

88. Am. Compl. [# 17], ¶ 134.

89. Am. Compl. [# 17], ¶ 156.

90. Mem. Opp. Mot. Dismiss [# 29], 18.

ment retaliation and political discrimination claims in counts One and Three. The City Officials also seek dismissal of the § 1983 Fourteenth Amendment claims in counts One and Five.

### 1. *First Amendment Speech and Retaliation*

The generalized allegations in Counts One and Three make the First Amendment claims difficult to decipher. Adhering to Plaintiff's interpretation,[91] he alleges a First Amendment political discrimination claim. Count One, which incorporates the preceding 187 paragraphs in the amended complaint, raises a First Amendment political discrimination claim. Count Three refers to speech as constituting protected activity and that it involved "a matter of public concern." This buzzword applies to First Amendment retaliation claims based on speech by a public employee.[92] In addition to seeking to dismiss the political discrimination claim, Defendants seek to dismiss a First Amendment retaliation-for-speech claim. Since Count Three encompasses such a claim, this court addresses it out of an abundance of caution.

 Turning to the First Amendment retaliatory speech claim, a state entity may not deprive an employee of his employment interest in retaliation for statements protected by the First Amendment.[93] "Government actors offend the First Amendment when they retaliate against an individual for constitutionally protected speech."[94] In assessing a First Amendment workplace retaliation claim based on speech, the first issue is "'whether the employee spoke as a citizen on a matter of public concern.'"[95] "If the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech."[96] As "long as employees are speaking as citizens about matters of public concern, they must face only those speech restrictions that are necessary for their employers to operate efficiently and effectively."[97]

 The first element of a retaliatory speech claim breaks down into "two subparts: (a) that the employee spoke as a citizen and (b) that the speech was on a matter of public concern."[98] Defendants seek dismissal on the basis that Plaintiff did not speak as a citizen but, rather, as a police chief about matters implicating his duties to investigate a patrolman's background and conduct.

 A public employee must be speaking as a citizen to obtain First Amendment protection.[99] "[W]hen public

---

**91.** Mem. Opp. Mot. Dismiss [# 29], 13–15.

**92.** *See Garcetti v. Ceballos,* 547 U.S. 410, 418, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006).

**93.** *Pickering v. Bd. of Educ.,* 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) (holding that teachers do not give up First Amendment rights they would otherwise enjoy as private citizens).

**94.** *Gonzalez–Droz v. Gonzalez–Colon,* 660 F.3d 1, 16 (1st Cir.2011).

**95.** *Rodriguez–Garcia v. Miranda–Marin,* 610 F.3d 756, 765 (1st Cir.2010) (quoting *Curran v. Cousins,* 509 F.3d 36, 45 (1st Cir.2007)) (internal quotation marks omitted).

**96.** *Garcetti,* 547 U.S. at 418, 126 S.Ct. 1951. Because Defendants move to dismiss based on this initial element and, in particular, that Plaintiff did not speak as a citizen, it is not necessary to discuss the other elements of a First Amendment workplace retaliation claim based on speech.

**97.** *Id.* at 419, 126 S.Ct. 1951.

**98.** *Curran,* 509 F.3d at 45 (citing *Garcetti,* 547 U.S. at 418, 126 S.Ct. 1951).

**99.** *See Foley v. Town of Randolph,* 598 F.3d 1, 5 (1st Cir.2010); *Curran,* 509 F.3d at 45.

employees make statements 'pursuant to their official duties,' they are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communication from employer discipline."[100] A controlling factor is thus whether Plaintiff's speech was made pursuant to his official duties.[101] A public employee's speech focusing on the events of the employee's workplace in the context of fulfilling official duties "is the quintessential example of speech that owes its existence to a public employee's professional responsibilities and thus is not protected under the First Amendment."[102]

■ Here, Plaintiff's speech involves sending the panel's February 13, 2009 vote in favor of terminating Acerra to the City Council. The amended complaint sets out other speech on the part of Plaintiff which similarly concerns Plaintiff's investigation of Acerra. The duties of Plaintiff as chief of police include supervising members of the department and assigning investigations and other duties to officers.[103] His employment contract made him responsible for administrative duties of the police department.[104] The speech involved events related to work, that is, the investigation of a probationary patrolman and a recommendation to terminate his employment. It is true that the recommendation was forwarded to the City Council which then held a series of open meetings, but at all times Plaintiff's speech was as a representative of the police department.[105] Plaintiff's speech also derived solely from his special knowledge obtained during the course of his investigation and therefore during the course of his employment. Plaintiff's speech was simply not the kind of activity engaged in by citizens who do not work for the police department.[106] These factors point to the conclusion that the speech was not protected because the subject matter of the speech was entirely within Plaintiff's official duties.

Plaintiff's speech is similar to the speech the Supreme Court found unprotected in *Garcetti.* In *Garcetti* the prosecutor sent his expressions about misrepresentations in a search warrant to his supervisor pursuant to his official duties.[107] The fact that the prosecutor in *Garcetti* was "fulfilling a responsibility to advise his supervisor about how best to proceed" removed his speech from First Amendment protection against discipline.[108] And here Plaintiff spoke as a police chief about a probationary patrolman in the context of his duties to investigate the background of existing or future members of the department and to make recommendations regarding their continued employment. Accordingly, the amended complaint does not plausibly allege that Plaintiff spoke as a citizen. The First Amendment workplace retaliation

100. *Foley*, 598 F.3d at 6 (quoting *Garcetti*, 547 U.S. at 421, 126 S.Ct. 1951).

101. *O'Connell v. Marrero–Recio*, 724 F.3d 117, 123 (1st Cir.2013).

102. *Id.* (citing *Garcetti*, 547 U.S. at 421–22, 126 S.Ct. 1951).

103. Am. Compl. [# 17], ¶¶ 18, 31, 36, 42, 46.

104. Am. Compl. [# 17], ¶¶ 158, 167.

105. *See Decotiis v. Whittemore*, 635 F.3d 22, 32 (1st Cir.2011) (considering "whether the speech gave objective observers the impression that the employee represented the employer" as a factor in determining whether employee spoke pursuant to official duties).

106. *See id.* at 34 ("[P]ublic-employee speech may be protected when it is 'the kind of activity engaged in by citizens who do not work for the government.'" (quoting *Garcetti*, 547 U.S. at 423, 126 S.Ct. 1951)).

107. *Garcetti*, 547 U.S. at 421, 126 S.Ct. 1951.

108. *Id.*

claim in Count Three is therefore subject to dismissal.[109]

## 2. *First Amendment Political Discrimination*

In Count One, Plaintiff raises a First Amendment political discrimination claim. He submits that he was the subject of retaliation based on his political affiliation in supporting the Mayor and his anti-union activities.[110] The following two paragraphs in the amended complain illustrate the nature of the claim:

132. The City Council voted to allow probationary police officer Joshua Acerra address [sic] the charges against him in open session. Thereafter, the Defendants' actions were designed to force the constructive discharge of the Plaintiff for seeking the lawful termination of a police officer who was politically favored by the City Council[111] and to attempt to politically damage the Mayor of the City for their own personal and political gains.

187. The City Council's pro-union actions were taken to seek and maintain favor with the public safety unions to ensure campaign contributions and to publicly and politically attack the Mayor and his administration for their role in the handling of the Acerra matter to further their political ambitions.[112]

The amended complaint also details that Roderick, a union officer, and Reardon spoke at the March 3 and the March 10, 2013 hearings. They accused Plaintiff of interfering with the investigation and tampering with the DVD evidence.[113] Acerra accused Plaintiff of retaliating against him for exposing the affair with Blackwell and stated that she was the individual who alerted Acerra to the confidential investigation.[114]

In moving to dismiss this claim, Defendants initially argued briefly in a footnote that the amended complaint failed to allege that the purported misconduct was based on his political affiliation.[115] Defendants do not argue that Plaintiff is not a member of a political party but, instead, simply and summarily state that the political retaliation was not based on Plaintiff's political affiliation. Defendants abandoned this argument in the reply brief and, instead, focused at length on Plaintiff holding a policymaking position outside the realm of First Amendment protection.[116] Given the brevity of the presentation, lack of any reasoned development, and a focus placed exclusively on another argument in the reply brief, the political affiliation argument is waived for purposes of resolving the present motion.[117]

---

109. Because this court concludes that Plaintiff was not speaking as a citizen and the retaliatory speech claim is therefore subject to dismissal, there is no need to address Defendants' argument that they enjoy qualified immunity. *See* Mem. Supp. Mot. Dismiss [# 22], 25–28.

110. Am. Compl. [# 17], ¶¶ 109, 117, 132, 140, 154, 187.

111. The amended complaint also recounts Acerra's close ties to a number of the City Council Defendants. Am. Compl. [# 17], ¶¶ 176–82.

112. Am. Compl. [# 17], ¶¶ 132, 187; Mem. Opp. Mot. Dismiss [# 29], 14.

113. Am. Compl. [# 17], ¶¶ 87, 90, 144–46.

114. Am. Compl. [# 17], ¶ 82.

115. Mem. Supp. Mot. Dismiss [# 22], 14 n. 9.

116. Reply Mem. Law Further Supp. Defs.' Mots. Dismiss [# 38].

117. *See In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 30 n. 7 (1st Cir.2009) (explaining that "the district court properly held that anything raised in [a prior] pleading" that was "not explain[ed] in the reply brief was waived"); *Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252, 260 (1st Cir.1999) ("The district court is free to disre-

It is well settled that " 'the First Amendment protects non-policymaking public employees from adverse employment actions based on their political affiliation or opinion.' " [118] Establishing "[a] prima facie case requires evidence that '(1) the plaintiff and the defendant belong to opposing political affiliations; (2) the defendant has knowledge of the plaintiff's affiliation; (3) a challenged employment action occurred; and (4) political affiliation was a substantial or motivating factor' behind it." [119] First Amendment protection, however, does not "apply to policymaking employees whose political affiliation is pertinent to their positions." [120] This exception "ensure[s] that elected representatives will not be hamstrung in endeavoring to carry out the voters' mandate." [121]

This circuit uses a two-prong analysis to determine whether an employee occupies a policymaking position. [122] "The first prong is satisfied ... as long as the position potentially 'involve[s] government decisionmaking on issues where there is room for political disagreement on goals or their implementation.' " [123] The authority attaching to Plaintiff's position as chief of police lends itself to categorization as such a position. Administering the department and assigning officers to various tasks and investigations potentially may lead to political disagreement.

The second prong focuses carefully on the specific position at issue. This court must determine "whether the specific responsibilities of the position sufficiently resemble those of a policymaker or office-holder whose functions are such that party affiliation is an appropriate criterion for tenure." [124] This is a "fact-specific" inquiry.[125] An employee's job description is ordinarily "of foremost importance." [126] "An employee with responsibilities that are not well defined or are of broad scope more likely functions in a policymaking position." [127]

In addition, policymaking employees "often have technical expertise ... and often report to a yet higher ranked official." [128] Relevant factors include:

the relative compensation level for the position, the technical expertise (if any) required to do the job, the extent to which the position involves supervision and control over others, the degree to which the position confers authority to speak in the name of higher-ups who themselves are policymakers, the influ-

gard arguments that are not adequately developed...."). Defendants are not foreclosed from raising the argument again in a more developed manner and framework.

118. *Vélez–Rivera v. Agosto–Alicea*, 437 F.3d 145, 152 (1st Cir.2006) (quoting *González–Piña v. Rodríguez*, 407 F.3d 425, 431 (1st Cir.2005)) (internal quotation marks omitted).

119. *Martinez–Vélez v. Rey–Hernández*, 506 F.3d 32, 39 (1st Cir.2007) (quoting *Peguero–Moronta v. Santiago*, 464 F.3d 29, 48 (1st Cir.2006)) (internal punctuation omitted).

120. *Wilson v. Moreau*, 492 F.3d 50, 52 (1st Cir.2007) (citing *Elrod v. Burns*, 427 U.S. 347, 360, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976)).

121. *Galloza v. Foy*, 389 F.3d 26, 28 (1st Cir.2004).

122. *Id.* at 29.

123. *Id.* (quoting *Jimenez Fuentes v. Torres Gaztambide*, 807 F.2d 236, 241–42 (1st Cir.1986)).

124. *Id.*

125. *Id.*

126. *Wilson*, 492 F.3d at 53.

127. *Elrod*, 427 U.S. at 368, 96 S.Ct. 2673.

128. *Wilson*, 492 F.3d at 53.

ence of the position over programs and policy initiatives, and the public perception of what the position entails.[129]

Other factors to consider include "the relationship of the position to elected officials" and " 'whether the employee acts as an adviser or formulates plans' " to implement broad goals.[130]

█ Plaintiff's position made him responsible for the administrative duties of the police department under the his employment contract with the City.[131] Drawing reasonable inferences from the facts in the amended complaint in Plaintiff's favor, his position also carried with it the authority to supervise members of the department and investigations into their backgrounds. His position included the authority to assign specific officers to perform those investigations.[132] The position therefore had a significant level of supervision and control over others.

There is little to indicate whether the police chief reported to the Mayor or to the City Solicitor, Torres.[133] Plaintiff's employment contract was with the City and the City Council, the appointing and the disciplinary body for the City.[134] As illustrated by the supervision and authority exercised by the Mayor and Torres over Plaintiff, however, the position may have lacked the broad sweep of discretionary powers inherent in a policymaking position. For example, Plaintiff complied with the Mayor's September 2008 instruction to turn the investigation of Acerra over to Torres[135] and followed Torres' directives not to testify and to restrict the questioning at the February 13, 2009, hearing.[136] Deferring to the City Solicitor, Torres, in situations involving employment actions "against City employees was a common practice."[137] Given this level of oversight in carrying out the duties of the job, the position plausibly lacked authority to implement broad goals. As to compensation, "[t]he City Council has no power to appropriate funds" and the relative compensation level for Plaintiff's position is not apparent in the record.[138] On the other hand, public perception of a police chief weighs in favor of finding policymaking authority. Viewing the record and reasonable inferences in Plaintiff's favor, the plausibility that Plaintiff was not a policymaking employee, while doubtful, is nonetheless present in the record.

The decision in *Wagner v. Devine*[139] does not warrant a different result. *Wagner's* facts are very similar, but unlike the case at bar, the parties in *Wagner* agreed that holding the position of police chief "sufficiently elevated [Plaintiff] in the [City of] Holyoke hierarchy that . . . he could be

---

129. *Galloza,* 389 F.3d at 29–30.

130. *Id.* at 30 (quoting *Elrod,* 427 U.S. at 368, 96 S.Ct. 2673).

131. Am. Compl. [# 17], ¶¶ 158, 166, 167.

132. Am. Compl. [# 17], ¶¶ 18, 31, 36, 42, 46, 147.

133. The amended complaint does reflect that City Solicitor Torres decided Plaintiff was not entitled to an annuity notwithstanding his ability to claim an annuity under his employment contract. Am. Compl. [# 17], ¶ 166. The City Council placed Plaintiff on leave but its authority for such action is not indicated in the record.

134. Am. Compl. [# 17], ¶¶ 166, 189.

135. Am. Compl. [# 17], ¶¶ 52–53.

136. Am. Compl. [# 17], ¶ 71.

137. Am. Compl. [# 17], ¶ 162.

138. Am. Compl. [# 17], ¶ 140.

139. 122 F.3d 53 (1st Cir.1997) (affirming Rule 12(b)(6) dismissal of political discrimination claim brought by police chief).

fired based on political affiliation." [140] On that basis, the First Circuit upheld the district court's determination that the plaintiff could be fired based on his politics.[141] Here, Plaintiff and Defendants dispute whether the position of police chief is a policymaking one and the record contains sufficient facts to plausibly conclude that it was not.[142] The First Amendment political discrimination claim in Count One is therefore not subject to dismissal.[143]

### 3. Fourteenth Amendment Due Process

As construed by Plaintiff,[144] Count Five raises a procedural due process claim under the Fourteenth Amendment against the City and City Council Defendants.[145] The City and City Council Defendants submit that Plaintiff does not state a procedural due process claim because Plaintiff voluntarily retired from his position as chief of police and, therefore, was not deprived of an employment interest. Defendants assume for purposes of these motions that Plaintiff had a protected interest in continued employment, but maintain that they did not deprive him of that interest by their conduct.[146]

Plaintiff's procedural due process claim alleges a denial of notice and an opportunity to be heard with respect to the false accusations of Plaintiff's criminal conduct and wrongdoing made during the open hearings.[147] Plaintiff also contends that the sequestration order and his exclusion from the hearing room denied him the ability to challenge the misconduct allegations.

▬▬▬▬ In order to establish a procedural due process claim, a plaintiff must show he "was deprived of a property interest by defendants acting under color of state law and without the availability of a constitutionally adequate process." [148] The Due Process Clause only "protects government employees 'who possess property interests in continued public employment.'" [149] A voluntary resignation from public office, however, precludes a procedural due process claim.[150] The principle

140. *Id.* at 56.

141. *Id.* at 57.

142. In *Wilson*, the First Circuit affirmed the district court's conclusion that a police chief was a policymaking employee, stating that "a police chief is *ordinarily* high ranking enough to make or influence policy." 492 F.3d at 53 (emphasis added). The court also found the fact that the police chief was subject to the mayor's supervision was not "highly relevant." *Id.* Nonetheless, *Wilson* was decided under the summary judgment standard and there was more information before the district court regarding the position and its place within the city hierarchy. *See Wilson v. Moreau*, 440 F.Supp.2d 81 (D.R.I.2006).

143. Because Defendants do not address their qualified immunity argument to the First Amendment political discrimination claim, the issue is not before this court. *See* Mem. Supp. Mot. Dismiss. [# 22], 25–28.

144. Mem. Opp. Mot. Dismiss [# 29], 13–15.

145. Am. Compl. [# 17], 41.

146. Mem. Supp. Mot. Dismiss [# 22], 16–17.

147. The amended complaint asserts that various City Council members lacked neutrality due to a bias in favor of Acerra. Am. Compl. [# 17], ¶¶ 176–84. Plaintiff frames the procedural due process claim in his opposition brief as based solely on notice and an opportunity to be heard. Mem. Opp. Mot. Dismiss [# 29], 13. He addresses the lack of a neutral decisionmaker only in the context of the Massachusetts Declaration of Rights Act claim. Mem. Opp. Mot. Dismiss [# 29], 16–17.

148. *Maymí v. P.R. Ports Auth.*, 515 F.3d 20, 29 (1st Cir.2008).

149. *Id.* (quoting *Galloza*, 389 F.3d at 33).

150. *See Monahan v. Romney*, 625 F.3d 42, 47 (1st Cir.2010) ("Because Monahan voluntarily resigned, his claim that the defendants deprived him of a property interest within the

that a voluntary and uncoerced resignation precludes a procedural due process claim applies even if the employee is prompted to resign " 'by events set in motion by his employer.' "[151] Conversely, an involuntary resignation may be subject to procedural protections.[152]

■■■ As stated in the amended complaint, Plaintiff "retired in light of statements made publicly and privately that the City intended to terminate his employment based upon allegations raised by Acerra, Roderick and Reardon that the City knew to be false."[153] Plaintiff had a choice between retiring and remaining on the job.[154] He was never asked to retire or officially terminated from employment. Statements made about his medical condition in light of his failure to attend the March 10 and 17, 2009 hearings were not sufficient to force, coerce, or even encourage his retirement. The fact that the City Council heard Roderick accuse Plaintiff of stopping and obstructing an investigation and tampering with evidence did not force Plaintiff to retire or cause the City Council to terminate Plaintiff's employment. The reaction by members of the City Council to Acerra's testimony regarding retaliation for exposing the affair between Plaintiff and Blackwell evinced concern about reputations and further belies any intention to terminate Plaintiff on the basis of Acerra's statement.[155] Accordingly, under the standard articulated in *Stone* and cited in *Monahan*, Plaintiff's voluntary retirement on May 15, 2009 precludes a procedural due process claim based on Plaintiff's constructive termination.[156] The procedural due process claim based on constructive termination in Count Five against the City and City Council Defendants is therefore dismissed.

### H. Section 1986 Claim

■■■ Defendants seek to dismiss Count Two alleging a violation of 42 U.S.C. § 1986 because Plaintiff cannot sustain a claim under 42 U.S.C. § 1985(3). A prerequisite for a claim under § 1986 "is the existence of a conspiracy actionable under section 1985."[157] In other words, "a § 1986 claim must be predicated upon a valid § 1985 claim."[158]

■■■■ In order to state a claim under § 1985(3), Plaintiff:

> must allege the existence of (1) a conspiracy, (2) a conspiratorial purpose to deprive a person or class of persons, directly or indirectly, of the equal protection of the laws or of equal privileges and immunities under the laws, (3) an overt act in furtherance of the conspiracy, and (4) either (a) an injury to person or property, or (b) a deprivation of a

---

meaning of the Due Process Clause necessarily fails."); *Walker v. Waltham Hous. Auth.*, 44 F.3d 1042, 1047 (1st Cir.1995) (citing *Stone v. Univ. of Md. Med. Sys.*, 855 F.2d 167, 172–75 (4th Cir.1988)).

**151.** *Monahan*, 625 F.3d at 47 (quoting *Stone*, 855 F.2d at 173).

**152.** *Stone*, 855 F.2d at 173–74.

**153.** Am. Compl. [# 17], ¶ 116.

**154.** *See Monahan*, 625 F.3d at 47.

**155.** Am. Compl. [# 17], ¶¶ 82–84.

**156.** Because Count Five is subject to dismissal on other grounds, this court need not consider whether Defendants are shielded by qualified immunity.

**157.** *Chemlen v. Giulmette*, No. 89–2308–NG, 1994 WL 548135, at *5 n. 8 (D.Mass. Aug. 30, 1994) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 222 n. 28, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)).

**158.** *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1088 (2d Cir.1993).

constitutionally protected right or privilege.[159]

In addition, the conspiratorial conduct of which Plaintiff complains should generally be "propelled by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus.'"[160] In short, Plaintiff must show that Defendants "conspired against [him] because of [his] membership in a class" and that "the criteria defining the class are invidious."[161] Cognizable classes under § 1985(3) have a substantive characteristic that defines the class such as race, gender, or political affiliation.[162] A class must constitute "a distinctive and identifiable group" and "at the very least ... must be more than just a group of persons who bear the brunt of the same allegedly tortious behavior."[163] Defendants seek to dismiss Count Two due to the absence of class-based animus.

In response, Plaintiff contends that the "conspiracy was motivated by political discrimination intended to deprive [him] of equal protection and privileges under the law."[164] Plaintiff further argues that he was affiliated with the administration of the Mayor, an elected official, who was "politically opposed" to the City Council.[165] The amended complaint establishes that there are a number of City Council Defendants who knew Acerra or his family.[166] The City Council also accepted campaign donations from police officers and the police union and engaged in pro-union activities.[167] Moreover, the City Council, in an attempt to politically damage the Mayor, allegedly conspired to force the constructive discharge of Plaintiff because he sought to terminate Acerra, a probationary patrolman, who was "politically favored" by the City Council.[168] The amended complaint is devoid of any allegation of a political party in the traditional sense. The issue therefore devolves into whether union campaign donations and union favoritism or bias coupled with City Council's favoritism toward Acerra on a personal level rises to the level of membership in a class.

 Plaintiff fails to allege a viable § 1985(3) claim because he has not alleged that the deprivation of a constitutionally protected right or privilege was propelled by Plaintiff's membership in a class. While Plaintiff asserts political motives at various points in the amended complaint, he does not point to a particular political affiliation targeted by the City or City Council. Plaintiff does allege that similar "constructive termination" of a Fire Chief took place after the events relevant to this action. But Plaintiff makes no mention of a common political affiliation between himself and the Fire Chief. Hence, he cannot recover under § 1986. Count Two is therefore dismissed to the extent it relies on § 1986.

## I. *State Civil Rights Claims*
### 1. *MCRA*

 The City seeks to dismiss the MCRA claim in Count Eight because it is

---

**159.** *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir.1996).

**160.** *Id.* (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971)).

**161.** *Id.* at 4.

**162.** *See id.*

**163.** *Id.* at 5.

**164.** Mem. Opp. Mot. Dismiss [# 29], 15.

**165.** Mem. Opp. Mot. Dismiss [# 29], 13.

**166.** Am. Compl. [# 17], ¶¶ 176, 177, 181, 182.

**167.** Am. Compl. [# 17], ¶¶ 184, 187.

**168.** Am. Compl. [# 17], ¶ 132.

not a "person" within the meaning of the statute. The Massachusetts Appeals Court has held that a "municipality is not a 'person' covered by" the MCRA.[169] The First Circuit has relied on *Howcroft* in dismissing MCRA claims against a municipality.[170] Because the City is not considered a "person" within the meaning of the MCRA, Count Eight must be dismissed against the City.

The City Council Defendants, Roderick, Reardon, and Acerra move to dismiss the MCRA claim because Plaintiff fails to identify a " 'secured right with which defendants interfered.' "[171] According to Defendants, Plaintiff fails to set out the violation of a constitutional right. Plaintiff argues that the violation of his procedural due process rights under the Fourteenth Amendment and his First Amendment right to be free from political discrimination constitute the requisite secured rights.[172]

■ To establish a claim under section 11*I* of Massachusetts General Laws chapter 12, Plaintiff must prove Defendants interfered or attempted to interfere with the exercise or enjoyment of his constitutional or civil rights by means of threats, intimidation, or coercion.[173] The MCRA "provides a mechanism for obtaining relief from the interference, or attempted interference, with rights conferred by Federal or Massachusetts law."[174] A MCRA claim therefore requires Defendants to have engaged in threatening or coercive activity that caused Plaintiff "to give up something that [he had] the constitutional right to do."[175] As previously discussed, Plaintiff's First Amendment political discrimination claim survives dismissal but his Fourteenth Amendment claim is subject to dismissal. Accordingly, the MCRA claim in Count Eight based on the Fourteenth Amendment is subject to dismissal whereas the MCRA claim based on a First Amendment violation survives dismissal.

For the foregoing reasons, Count Eight is dismissed in its entirety against the City and is dismissed against the other Defendants to the extent it is based upon a violation of the Fourteenth Amendment.

### 2. *Massachusetts Declaration of Rights*

■ Count Four raises Massachusetts Declaration of Rights claims against the City and City Council Defendants. Plaintiff alleges a due process violation under Article 29 of the Massachusetts Declaration of Rights in addition to the Fourteenth Amendment Claim in Count Five. Defendants move to dismiss the Article 29 claim for the same reason the federal Fourteenth Amendment claim fails.[176] The Massachusetts Supreme Judicial Court "treat[s] the procedural due process protections of the Massachusetts and United States Constitutions identically."[177] Because Massachusetts due process protections are identical to those under the

169. *Howcroft v. City of Peabody*, 51 Mass.App. Ct. 573, 747 N.E.2d 729, 744–45 (2001).

170. *Kelley v. LaForce*, 288 F.3d 1, 11 n. 9 (1st Cir.2002); *see also McCarthy v. Szostkiewicz*, 188 F.Supp.2d 64, 71 (D.Mass.2002).

171. Mem. Supp. Mot. Dismiss [# 19], 10 (quoting *Perkins v. Commonwealth*, 52 Mass. App.Ct. 175, 752 N.E.2d 761, 766 (2001)); Mem. Supp. Mot. Dismiss [# 22], 21.

172. Mem. Opp. Mot. Dismiss [# 29], 16.

173. Mass. Gen. Laws ch. 12, § 11H.

174. *Howcroft*, 747 N.E.2d at 745.

175. *Bolduc v. Town of Webster*, 629 F.Supp.2d 132, 157 (D.Mass.2009).

176. *See supra* Part III.G.3.

177. *Doe v. Attorney Gen.*, 426 Mass. 136, 686 N.E.2d 1007, 1013 n. 8 (1997).

federal constitution, Plaintiff's due process claims based on a violation of Article 29 are subject to dismissal for the reasons discussed in connection with Plaintiff's Fourteenth Amendment claim.

Count Four raises the additional claim that the City Council Defendants violated Article 30 of the Massachusetts Declaration of Rights by not appointing an independent, neutral hearing officer for the February and March 2009 hearings.[178] The amended complaint details the lack of neutrality on the part of a number of City Council Defendants based upon their personal connections to Acerra, his family, or other witnesses.[179] Plaintiff alleges the City and City Council Defendants violated Article 30 by simultaneously acting with judicial (presiding over the hearing) and executive (placing Plaintiff on administrative leave) authority. The City and City Council Defendants purportedly violated Article 30 "by assuming duties reserved for the executive branch of the City of Taunton; that is, by conducting an investigation of the plaintiff in open session and then directing a further investigation of the plaintiff."[180] The City Council Defendants allegedly "usurped the power of the executive branch," which "had investigated the matter."[181]

The City and City Council Defendants move to dismiss the Article 30 claim on the basis that the City Council, which is the appointing and disciplinary body for the City,[182] may investigate and adjudicate public employees without violating Article 30.[183] The Supreme Judicial Court has upheld the use of a commission to investigate and determine "alleged misconduct of public employees," dealing with "subjects which may ultimately come before the courts."[184] The court made clear that many such investigations will not violate the separation of powers doctrine.[185] "There is no constitutional barrier" to a legislative or executive investigation where the investigatory body "cannot make a binding determination that a crime, tort, or any other actionable event has occurred."[186]

The Massachusetts Supreme Judicial Court has long held that the "power to remove an officer . . . is of an executive or administrative nature rather than of a judicial nature."[187] *Collins* upheld the power of a board of selectmen to remove a public official.[188] Here, Plaintiff was put on administrative leave after the hearings before the City Council. And here, as in *Collins*, Defendants did not violate Article 30. The Article 30 claim is therefore subject to dismissal. For the foregoing reasons, the Massachusetts Declaration of Rights claims in Count Four are dismissed.

### J. Constructive Termination

The City and City Council Defendants seek to dismiss the constructive termination claim in Count Ten because Plaintiff voluntarily retired from his employment.

---

178. Am. Compl. [# 17], ¶¶ 211–13.

179. Am. Compl. [# 17], ¶¶ 176–82.

180. Am. Compl. [# 17], ¶ 216.

181. Am. Compl. [# 17], ¶¶ 216–17.

182. Am. Compl. [# 17], ¶ 131.

183. Mem. Mot. Dismiss [# 22], 21–22.

184. *Human Rights Comm'n v. Assad*, 370 Mass. 482, 349 N.E.2d 341, 345 (1976).

185. *Id.*

186. *Id.*

187. *Collins v. Selectmen of Brookline*, 325 Mass. 562, 91 N.E.2d 747, 749–50 (1950).

188. *Id.*

Plaintiff alleges that he "retired in light of statements made publicly and privately that the City intended to terminate his employment based upon allegations raised by Acerra, Roderick and Reardon that the City knew to be false." [189]

 A plaintiff's cessation of employment is presumed voluntary unless the plaintiff can show constructive discharge.[190] To establish a constructive discharge claim Plaintiff must establish "working conditions so intolerable[ ] that a reasonable person would feel compelled to forsake his job rather than to submit to looming indignities." [191] The test is an objective one, otherwise "an employee who quit, and thereafter thought better of it, could claim constructive discharge with impunity." [192]

 The facts in the amended complaint do not sufficiently show an intolerable workplace. Plaintiff submits merely that the City intended to terminate his employment based on allegedly false statements made by Acerra and Roderick during the hearings. This is insufficient. The constructive termination claim in Count Ten therefore does not survive the motion to dismiss.

### K. *Intentional Torts*
#### 1. *Defamation*

Acerra, Reardon, and Roderick contend that Plaintiff cannot show actual malice in connection with the allegedly defamatory statements. Plaintiff submits that Acerra, Reardon, and Roderick acted with the requisite malice when discussing his personal matters and the alleged extramarital affair between Plaintiff and Blackwell in open session.

 Under Massachusetts law, to prevail on a defamation claim the plaintiff must establish that: "(1) the defendant published an oral (slander) or written (libel) statement; (2) the statement was about, and concerned, the plaintiff; (3) the statement was defamatory; (4) the statement was false; and (5) the plaintiff suffered economic loss, or the claim is actionable without proof of economic loss." [193] A statement is defamatory if it "may reasonably be [understood] as discrediting [the plaintiff] in the minds of any considerable and respectable class of the community." [194] Even if the statements made by Defendants were true, Plaintiff could recover if the statements were made with actual malice.[195]

 Because police officers are considered public officials for the purpose of defamation claims, Plaintiff must also provide proof of actual malice by clear and convincing evidence.[196] In the context of defamation, the term "actual malice" is

**189.** Am. Compl. [# 17], ¶ 116.

**190.** *See Vega v. Kodak Caribbean, Ltd.,* 3 F.3d 476, 480 (1st Cir.1993).

**191.** *Id.; see also Alicea Rosado v. Garcia Santiago,* 562 F.2d 114, 119 (1st Cir.1977) ("[T]he trier of fact must be satisfied that the new working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.").

**192.** *Vega,* 3 F.3d at 481.

**193.** *Noonan v. Staples, Inc.,* 707 F.Supp.2d 85, 89 (D.Mass.2010) (citing *Stanton v. Metro Corp.,* 438 F.3d 119, 124 (1st Cir.2006)).

**194.** *Disend v. Meadowbrook Sch.,* 33 Mass. App.Ct. 674, 604 N.E.2d 54, 55 (1992).

**195.** *Noonan,* 707 F.Supp.2d at 87 ("[T]he Massachusetts defamation statute imposes liability even for true statements that are shown to have been made with 'actual malice'. . . .").

**196.** *Rotkiewicz v. Sadowsky,* 431 Mass. 748, 730 N.E.2d 282, 288–89 (2000).

interpreted to mean "the 'defamatory falsehood was published with knowledge that it was false or reckless disregard of whether it was false.' "[197] Plaintiff will not succeed by merely showing Defendants' "dislike of, hatred of, or ill will" toward him.[198] The inquiry turns on Defendants' "attitude toward the truth or falsity of the statement rather than [their] attitude toward" Plaintiff.[199]

Plaintiff contends that Reardon and Roderick, in their individual capacities, defamed him when "they testified that he interfered with the Acerra investigation and tampered with evidence."[200] Plaintiff cannot rely on "actual-malice buzzwords," and must plead facts to support his legal conclusions.[201] Plaintiff alleges that Roderick and Reardon knew the City Solicitor had instructed Plaintiff to redact the interview DVD, that Plaintiff had referred the investigation to the City Solicitor, and that Reardon and Roderick made false claims against him to secure promotional advantage.[202] While Plaintiff's amended complaint is not a model of clarity, he pleads sufficient facts, taken as true, to plausibly infer that Reardon and Roderick either knew their statements about Plaintiff interfering with an investigation were false or recklessly disregarded their falsity based on their knowledge that Plaintiff was simply complying with orders. Count Six thus survives dismissal as to Reardon and Roderick.

Turning to the statements made by Acerra, Plaintiff asserts that Acerra's testimony during the February 17, 2009 hearing was made to humiliate Plaintiff, and for the purpose of diverting attention from his own investigation.[203] This assertion is corroborated Councilman Fiore's acknowledgment that "Acerra and his attorney went out of their way to personally humiliate the Chief of Police and his family."[204] When read in Plaintiff's favor, these facts are sufficient to infer actual malice. Count Six therefore survives dismissal against Acerra as well.

### 2. Infliction of Emotional Distress ("IIED")

Acerra, Reardon, Roderick, and the City Council Defendants seek dismissal of the IIED claim in Count Twelve on the grounds that Plaintiff has not pleaded extreme and outrageous conduct and that Plaintiff has not experienced severe emotional distress. Plaintiff submits that the "defamatory allegations motivated by monetary rewards and political favoritism" is sufficient extreme and outrageous conduct.[205]

A claim for IIED requires that the plaintiff establish:

"(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional dis-

197. *Id.* at 289 (quoting *Stone v. Essex Cnty. Newspapers*, 367 Mass. 849, 330 N.E.2d 161, 173 (1975)).

198. *Rotkiewicz*, 730 N.E.2d at 289.

199. *Id.*

200. Opp. Mot. Dismiss [# 31], 16.

201. *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 56 (1st Cir.2012).

202. Am. Compl. [# 17], ¶¶ 70, 143, 145–46; *Schatz*, 669 F.3d at 57 (comparing the defen-

dant's statements with what had been disclosed by newspapers); *Rotkiewicz*, 730 N.E.2d at 289 (opining that the inquiry should focus on the defendant's attitude toward the statement's truth).

203. Am. Compl. [# 17], ¶¶ 102, 157, 163.

204. Am. Compl. [# 17], ¶ 102.

205. Opp. Mot. Dismiss [# 31], 20.

tress was the likely result of [the] conduct; (2) that the conduct was 'extreme and outrageous,' was 'beyond all possible bounds of decency' and was 'utterly intolerable in a civilized community;' (3) that the actions of the defendant were the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was 'severe' and of a nature 'that no reasonable [person] could be expected to endure it.' " [206]

Plaintiff misunderstands the restricted reach of this tort under Massachusetts law.[207] Extreme and outrageous conduct is behavior that is " 'so outrageous in character ... as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " [208] Plaintiff does not need to prove his case at this juncture, but does bear the burden of pleading facts that make the claim plausible.[209] Plaintiff fails to carry that burden.

 The facts in the amended complaint show that Plaintiff's personal matters were discussed in open hearings, Plaintiff was put on paid administrative leave, and that he subsequently voluntarily retired. Such facts and reasonable inferences therefrom do not plausibly assert extreme and outrageous conduct. Additionally, the amended complaint merely recites the elements of the tort. Plaintiff fails to plead facts evidencing that he suffered distress that was severe and unendurable to a reasonable person, as is required for an IIED claim. Because the amended complaint fails to proffer outrageous conduct on the part of Defendants and severe emotional distress on the part of Plaintiff, the IIED claim in Count Twelve is dismissed.

### 3. *Invasion of Privacy*

In Count Seven, Plaintiff seeks to recover against Acerra, Reardon, Roderick, the City, and City Council Defendants for having allegedly invaded his privacy by discussing his private affairs in open session.[210] Defendants move to dismiss this claim because the purported intrusion concerned Plaintiff's alleged misconduct as chief of police, which is a matter of public concern, and the intrusion was not unreasonable. Plaintiff submits that the topic of the hearing was to examine Acerra and, therefore, discussion of Plaintiff's fitness to perform his duties was unreasonable.

 An invasion of privacy claim requires a plaintiff to "establish that the disclosure was both unreasonable and either substantial or serious." [211] Where the invasion takes place in the context of employment, the information at issue must be of a " 'highly personal or intimate nature' " and that " 'there exists no legitimate coun-

---

**206.** *Doyle v. Hasbro, Inc.,* 103 F.3d 186, 195 (1st Cir.1996) (alteration in original) (quoting *Agis v. Howard Johnson Co.,* 371 Mass. 140, 355 N.E.2d 315, 318–19 (1976)).

**207.** *See Chakrabarti v. Cohen,* 31 F.3d 1, 6 (1st Cir.1994) (recognizing that "Massachusetts law keeps a reasonably tight rein on the tort remedy for [IIED]").

**208.** *Flibotte v. Pa. Truck Lines, Inc.,* 131 F.3d 21, 27 (1st Cir.1997) (quoting *Foley v. Polaroid Corp.,* 400 Mass. 82, 508 N.E.2d 72, 82 (1987)).

**209.** *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937.

**210.** *See* Mass. Gen. Laws ch. 214, § 1B. This court assumes that the reference in Count Seven to "M.G.L. C. 215 § 1B" is an error and that Plaintiff intended to cite chapter 214 of the Massachusetts General Laws. *See* Am. Compl. [# 17], 42. Chapter 215 does not contain a section "1B."

**211.** *Ayash v. Dana–Farber Cancer Inst.,* 443 Mass. 367, 822 N.E.2d 667, 682 (2005).

tervailing interest' " in disclosure.[212] A balancing test is used to determine the reasonableness of an intrusion: the " 'employer's legitimate interest in determining the employees' effectiveness in their jobs [is] balanced against the seriousness of the intrusion on the employees' privacy.' " [213] This test is also used when "the information disclosed about an employee is medical information." [214]

■ Plaintiff's invasion of privacy claim involves both the comments about Plaintiff's health or medical status and the prepared statements Acerra read about Plaintiff's extramarital affair. Plaintiff alleges that the City Council "openly debated" his medical condition at several points in his complaint, but never indicates the nature of the discussion.[215] While the City Council Defendants openly discussed Plaintiff's medical condition, the discussion pertained solely to his failure to appear before a public committee. It was thus well within reason for the City Council Defendants to inquire as to Plaintiff's failure to appear. The accusations made by Roderick and Reardon regarding Plaintiff's job performance were not made by the City Council, and the City Council did not initially inquire about these matters. Those statements therefore cannot be the basis on which to support an invasion of privacy claim against the City Council Defendants. Furthermore, allowing Acerra to read from a prepared statement, without more, does not make the City Council Defendants responsible for the contents of the statement. Count Seven is thus sub-ject to dismissal as to the City Council Defendants.

■ Plaintiff also names Reardon and Roderick as defendants in Count Seven. Plaintiff is unclear, however, about what "highly personal or intimate" facts were disclosed by Reardon and Roderick. Plaintiff focuses on the fact that Reardon and Roderick testified regarding Plaintiff's alleged involvement in interfering with the investigation and tampering with evidence. These are not matters of an intimate nature and, in any event, it was reasonable for Defendants Reardon and Roderick to address these matters in the context of Acerra's termination hearing. Count Seven is therefore dismissed as to Reardon and Roderick.

■ Turning to Acerra, the amended complaint reflects that during the February 17, 2009 hearing Acerra stated "he was subject to retaliation for exposing an affair between [Plaintiff] and [Blackwell] and for truthfully reporting that [Blackwell] alerted him to the ongoing investigation." [216] The invasion of privacy claim against Acerra therefore hinges on Acerra's statements during the February 17, 2009 hearing. For purposes of this motion, it is not necessarily reasonable for Acerra to have discussed Plaintiff's alleged affair with Blackwell in a public hearing regarding his termination. The amended complaint sets out a plausible claim that raising information about Plaintiff's affair involved a highly personal or intimate matter, which was unreasonable. Plaintiff sufficiently pleads facts to support this ele-

---

212. *Id.* (quoting *Bratt v. Int'l Bus. Machs. Corp.*, 392 Mass. 508, 467 N.E.2d 126, 134 (1984)).

213. *Dasey v. Anderson*, 304 F.3d 148, 154 (1st Cir.2002) (quoting *O'Connor v. Police Comm'r of Bos.*, 408 Mass. 324, 557 N.E.2d 1146, 1150 (1990)).

214. *Bouley v. City of Bedford*, No. 00–CV–12580RG, 2005 WL 3287924, at *7 (D.Mass. Dec. 5, 2005).

215. Am. Compl. [# 17], ¶¶ 97, 99, 138.

216. Am. Compl. [# 17], ¶ 82.

ment and therefore, Count Seven survives dismissal as to Acerra.

### 4. *Interference with Contractual Relations*

■■■ Acerra and the City Council Defendants seek dismissal of the intentional interference with contractual relations claim in Count Eleven because Plaintiff voluntarily retired. Plaintiff opposes dismissal on the basis that the defamatory statements made during the hearing caused Plaintiff's suspension and constructive termination, which interfered with his employment contract with the City.[217]

In order to succeed on this claim, Plaintiff must show: (1) the existence of a contract between Plaintiff and the City; (2) that Defendants knowingly induced the City to break the contract; (3) Defendants' intentional interference was improper; and (4) damages.[218] Plaintiff's interference claim must be dismissed because he cannot show a breach of contract, one of the necessary elements. As discussed above, the City did not constructively terminate Plaintiff. Instead, Plaintiff voluntarily retired.[219] Without a breach of contract, Count Eleven against Acerra and the City Council Defendants is subject to dismissal.[220]

## IV. Conclusion

For the foregoing reasons, Defendant Acerra's *Motion to Dismiss for Failure to State a Claim* [# 18] is ALLOWED as to Counts Three, Eleven, and Twelve, as well as to Count Two to the extent it is based on a § 1986 claim and Count Eight to the extent it asserts a Fourteenth Amendment violation. Defendant Acerra's *Motion to Dismiss for Failure to State a Claim* [# 18] is DENIED as to Counts One, Six, and Seven, as well as Count Two to the extent it is based on Massachusetts common law and Count Eight to the extent it relies on a First Amendment political discrimination claim.

Additionally, the City's *Motion to Dismiss for Failure to State a Claim* [# 21] is ALLOWED as to Counts Three, Four, Five, Seven, Eight, Nine, Ten, and Thirteen, as well as Count Two to the extent it relies on § 1986. The City's *Motion to Dismiss for Failure to State a Claim* [# 21] is DENIED as to Count One and Count Two to the extent it relies on Massachusetts common law.

Finally, this court will address the City Officials' *Motion to Dismiss for Failure to State a Claim* [# 23] separately for the City Council Defendants and for Defendants Reardon and Roderick. With respect to the City Council Defendants, the *Motion to Dismiss for Failure to State a Claim* [# 23] is ALLOWED as to Counts Three, Four, Five, Seven, Nine, Ten, Eleven, and Twelve, as well as Count Two to

---

217. Opp. Mot. Dismiss [# 31], 18–19.

218. *Platten v. HG Bermuda Exempted, Ltd.,* 437 F.3d 118, 130 (1st Cir.2006) (citing *G.S. Enters., Inc. v. Falmouth Marine, Inc.,* 410 Mass. 262, 571 N.E.2d 1363, 1369–70 (1991)).

219. *See supra* Parts III.G.3, III.J.

220. For these reasons, Plaintiff's breach of contract claim against the City in Count Thirteen is also subject to dismissal. Although the City moves to dismiss Plaintiff's amended complaint in its entirety, the City raises no arguments explicitly directed toward the breach of contract claim. *See* Mot. Dismiss [# 21]; Mem. Supp. Mot. Dismiss [# 22]. While the basis of Plaintiff's breach of contract claim is opaque in the amended complaint, Plaintiff's opposition brief makes clear that it is premised on his constructive termination. Opp. Mot. Dismiss [# 31], 18–19. Because the parties have fully briefed the constructive termination issue and Plaintiff has failed to allege facts supporting that claim, Plaintiff's claim for breach of contract is also dismissed.

the extent it relies on § 1986 and Count Eight to the extent it is based on a violation of the Fourteenth Amendment. The motion is DENIED as to Count One, Count Two to the extent it relies on Massachusetts common law, and Count Eight to the extent it is based upon political discrimination.

With respect to Defendants Reardon and Roderick, the *Motion to Dismiss for Failure to State a Claim* [# 23] is ALLOWED as to Counts Three, Seven, Eleven, and Twelve, as well as Count Two to the extent it is based on § 1986 and Count Eight to the extent it is based on a violation of the Fourteenth Amendment. The motion is DENIED as to Counts One and Six, as well as Count Two to the extent it relies on Massachusetts common law and Count Eight to the extent it is based upon political discrimination.

AN ORDER HAS ISSUED.

### ORDER

For the reasons and to the extent stated in the accompanying memorandum, Defendant Acerra's *Motion to Dismiss for Failure to State a Claim* [# 18], the City of Taunton's *Motion to Dismiss for Failure to State a Claim* [# 21], and the City Officials' *Motion to Dismiss for Failure to State a Claim* [# 23] are all ALLOWED IN PART AND DENIED IN PART.

IT IS SO ORDERED.